Tilghman, C. J.
This was an action of ejectment, brought by Jacob Shoenfelt, the plaintiff below, against Thomas II. Stewart, the defendant below and plaintiff in error. The plaintiff claimed under W. Wilson, who purchased of Samuel Steel, treasurer of the county of huntingdon, at a sale of the unseated lands of the said county, on which taxes had been assessed, which were unpaid. On the trial of the cause in the Court of Common Pleas, no less than seventeen points of law were proposed by the defendant’s counsel, to the court, on which opinions in writing were required, to be filed of record, according to the act of assembly in such case provided. I cannot but regret the practice under this act of assembly, by which the courts are harassed by unnecessary questions, and judgments often reversed on points foreign to the merits. In the present instance, the same principle was proposed, under *369 different aspects, again and again; and many of the questions were founded on an assumption of facts not existing, and which, consequently,-' the court was not bound to answer. The whole seventeen points, so far as they arose on the facts of the case, may be reduced jo three. — 1. Could the plaintiff recover, without showing the title to be out of the commonwealth? 2. Could lands, lying in one township, pass, under a deed describing them as lying in another? 3. Could the plaintiff recover, under a sale for taxes, the land having been assessed in a different township from that in which it actually lay?
1. Under the circumstances of this case, I have no doubt that the plaintiff might recover, without direct proof of the title being out of the commonwealth; because both plaintiff and defendant claimed under the commonwealth, which was an indirect admission by the defendant, that the title had passed from the commonwealth. The plaintiff gave evidence of a title under a sale for taxes, and so likewise did the defendant. Now, land cannot be assessed for taxes, while the title remains in the commonwealth. The fact, therefore, of the title being out of the commonwealth, was virtually admitted by the defendant; and it is evident, that what is admitted by one party, need not be proved by the other.
2. The second point is as plain as the first. The deed from Samuel Steel, the treasurer, described the land conveyed to W. Wilson, in various ways, and the only question could be, whether, on the whole, the tract of land claimed by the plaintiff, and that conveyed by Steel, were identified. It is true,-the deed described it as lying in the township of Porter, which was not the fact, and in that point the description failed; but there were also other circumstances of description, viz. that it was originally surveyed in the name of George Sevitz, that it contained the quantity of four hundred and twenty-five acres, and sixty-nine perches, and was situate in the county of Huntingdon. Now, if it was surveyed for George Sevitz, for the exact quantity of four hundred and twenty-five acres, and sixty-nine perches, and there was no evidence of any other tract in Huntingdon county, surveyed for the same person, and containing the same quantity, the probability was very strong, that it was the same tract as that which was conveyed to Wilson. Whether it was the same, however, was a fact to be decided by the jury, and if the court had refused, on request of the defendant’s counsel, to submit it to the jury, it would have been error. But no such request was made. What the counsel asked, was an opinion that the mistake of the township was fatal. In so clear a case, there is very little occasion to cite authorities. If there were, it would be sufficient to refer to those cited by the counsel for the plaintiff. I shall mention but one, The Lessee of Grant v. Eddy, 2 Yeates, 148, where it was held, that lands lying in one county, passed, by a warrant describing them as lying in another.
*370 3. The third point is the only one on which I have felt any difficulty; but, upon full consideration, I am satisfied that the law is with the plaintiff. The fact was, that the tract in the name of George Sevitz, was assessed in Porter township, though it lay in the adjoining townships of Hopewell and Woodberry, a mile or two distant from Porter. There is no doubt, that the assessor of Porter had no right to assess this land, his authority being confined to his township. But he did assess it, and the question is, whether, under our acts of assembly, the defendant is permitted to avail himself of this irregularity in the assessment. Government cannot be supported without taxes, and it cannot be. denied, that the legislature has power to direct the manner of laying and collecting them. As there is no personal property in unseated lands, it is difficult to devise any other mode of collecting the taxes imposed on them, than by sale of the lands themselves. Accordingly, all our acts of assembly have ordered a sale of the lands, after reasonable notice to the owners. But, as these owners generally reside at a distance too great to serve a personal notice, the county commissioners have been directed to give notice by advertisements, written, or printed, or both, as prescribed in the several acts. To these laws the courts have found themselves obliged to give a strict construction, because they introduced a new mode of transferring real estate, without the consent of the owner. The consequence was, that in scarce any instance have the purchasers at the sales of the commissioners succeeded in their ejectments for the recovery of the lands. It was thought necessary, therefore, to adopt a new plan, which should give to the owners of lands sold for taxes, a reasonable time for redemption, and cut them off, in case they did riot embrace the opportunity in the given time, from all right to avail themselves of irregularities in the proceedings of the commissioners, or those who sold the lands under their authority. On this principle, it was enacted, by the act of the 13th of March, 1815, sect. 4, Purd. Dig. 787, 6 Sm. L. 299, that, “if the owner of lands sold for taxes, shall, within two years after such sale, make a tender of the amount of the taxes for which the land was sold, and costs, with the additional sum of twenty-five per cent, on the same, to the county treasurer, and if it shall be refused by the said treasurer, or in case the owner of lands so sold shall have paid the taxes due on the said lands previously to the sale, then, and in either of these cases, the said owner shall be entitled to recover the same by due course of law; but in no other case, and on no other plea, shall an action be sustained; and so much of the act to which this is a supplement, (the act of the 3d of Jipril, 1804,) as requires notice of the taxes being due, and sale of the said land, to be given in certain public newspapers, is repealed; and no alleged irregularity in the assessment, or in the process, or otherwise, shall affect the title of the purchaser; but the same shall be declared to be good, and legal.” If the title *371 of the purchaser is good against the former owner, a fortiori, it is good against one who stands in the situation of the present defendant, who has shown no title, but only given evidence of a purchase at a former sale for taxes, without having paid the purchase money, or obtained a deed from the treasurer of the county. I incline to the opinion, that, notwithstanding the general and strong expressions of the act of 1815, it is to be understood, that the former owner might be permitted to avoid the sale, if the laud was settled, and not unseated, or, if it had not been assessed at all. It is necessary that the lands should be unseated, to make the sale good, because the whole system is confined to unseated lands; nor have the commissioners, or any other persons, authority to take a single step leading to the sale of any” other lands than those which are unseated. And it is necessary that the land should be assessed, because, otherwise it is impossible for the owner to pay the tax, (no tax being imposed,) and thus he would lose the right given him by the fourth section, of avoiding the sale, by proving that he had paid the taxes previously to the sale. In short, the law supposes that the tax was laid, and on that supposition are its enactments founded. But if, in fact, the land has been assessed, however irregularly, the sale stands good. The question to be decided, then, is reduced to a single point — Has this land been assessed? Iam of opinion that it has, though certainly, irregularly. But, it is contended, that the assessment in this case was void, and therefore to be considered as no assessment, and not an irregular one. The argument is not without plausibility, but I confess, that to me it appears too subtle, because it is against fact, and destroys the substance of the law. It is against fact, because the land was assessed by the assessor of Porter township; and, moreover, it is not only in opposition to the words, but the spirit of the law, which seems to have contemplated the very case before us. By the act of the 3d of April, 1804, which forms part of the same system, sect. 1, (Purd. Dig. 783, 4 Sm. L. 201,) the deputy surveyors of each county, are directed, to return to the commissioners, wheu requested, an account of all surveys in their count)7, including a list, giving the number of acres in each, survey, or warrant, the name and surname of every warrantee, the waters on which each tract is situate, the lands contiguous, and the township, if known where situate, to be entered by the commissioners in a book, &c. The difficulty of ascertaining the township is here adverted to, and indeed it must strike every person, on a little reflection; because, a va^t quantity of land has been surveyed before it was divided into townships, in which case, the original warrant or survey cannot show the township. And after the townships have been described by law, but the lines not actually run, (a period frequently of several years,) it is impossible for the assessors to know with certainty, whether the lands near the supposed line, are within their respective townships or not. An assessment of a tract of land, *372 under these circumstances, in the wrong township, would be irregular, and probably one of the irregularities foreseen, and intended to be guarded against. But I cannot think, that, in the view of the legislature, it was no assessment at all. One cannot, without pain, see a man divested of his property in a tract of upwards of four hundred acres, for a tax of less than four dollars. But if landholders will pay no attention to taxes, what is to be done’ It must be presumed that every man knows the land he owns, and knows that taxes are imposed on it annually, and sales made once in every period of two years, of the lands, the taxes on which are unpaid. It is within his own knowledge too, that he has not paid them, and has thus then been guilty of a breach of duty. It is the business of every man who is the owner of unseated lands, at a distance from him, to employ an agent, and give him a description of his lands. If the description is given with tolerable accuracy, the agent will find the amount of the taxes in the books of the commissioners, whether the township is mistaken or not; for it is hardly possible that there should he two tracts in the same county, surveyed originally for the same person, and containing exactly the same quantity. But if there should be eases, and I admit there may, in which great hardship may fall on individuals, by the construction given to this act of assembly, I can only say, that though very sorry for it, I should have no right to alter the law, in order to relieve these particular inconveniences, with which all general systems must be attended. In this case, the court is not unanimous in opinion, which has induced me to say more than I should otherwise have thought necessary. My opinion is, that the judgment should be affirmed.
Gibson, J.
By the terms of the act of assembly, a tax must be due at the time of the sale; for where all taxes which had been previously laid are paid, the owner may recover against the purchaser. But a tax can be laid only by an assessment, which is nothing but the imposition of a debt or duty by some one having authority. Mere irregularity in the assessment is cured; but the legislature evidently did not mean to dispense with an assessment altogether, without which there can be no tax to give the colour of authority to sell: and the question, therefore, is whether an assessment of lands lying in one township, by the officers of another, is merely irregular or absolutely void.
It will not be diputed, that the legislature had a right to declare it to be either the one or the other; and the question must necessarily be decided, not by a resort to technical principles, but by an application of the legislative will, as it may be collected from the various acts on the subject. We all know the absolute worthlessness of the title under commissioners’ sales, by virtue of former laws, and the consequent disregard of the laws to enforce the payment of taxes on unseated lands; and we cannot hesitate to *373 believe, that to provide a remedy which could not be eluded, the legislature determined to remove all difficulties by declaring, once for all, that after the period of two years tire former owner should avail himself of no defect in the title where the tax was due, if it were assessed by any one having the colour of authority. This they have declared, not in terms, but virtually. We must suppose they understood their business; and, if so, they certainly knew that in many parts of the state there were extensive districts of uninhabited country, in which it would be extremely difficult, if not impossible, to ascertain the township in which each particular tract should lie; and to say that lands, thus circumstanced, should not be sold for taxes, would be in effect to exempt them from taxation. Even in the inhabited parts of the state, mistakes in this particular frequently occur. That they might occur any where, the legislature were fully aware; for, to furnish the commissioners with information to enable them duly to perform the business of taxation, they had declared in the act of the 3d of Jlpril, 1804, that the deputy surveyors of the several counties should make return to the commissioners of all land surveyed within their respective counties, of which they should have draughts or maps made by themselves or their predecessors; and of all warrants or orders not executed; in which returns were to be stated, the number of acres, the names of the warrantee, “ and the name of the township, if known” in which the tract should lie. This evinces a desire that as few errors as possible ¡Should creep into the proceedings of the commissioners; but it also evinces a consciousness that to procure in every instance an assessment by the officers of the proper township,, might be impossible; and it is therefore incredible that the legislature, on passing the act of 1815, should have intended, notwithstanding their own sweeping declarations to the contrary, that an error in this particular should be fatal to the title. This is not, as supposed, an isolated case. In the northwestern parts of the state, I have not the least doubt that hundreds of tracts have fi’om the beginning been taxed out of the proper township; and as this is the first case under the act of 1815 that has come before us, I am desirous to set oút with a liberal construction in favour of the object of its enactment. The legislature has at length placed the business of sales for taxes on practicable ground; and whilst the exigencies of the public are answered, no injustice will be suffered by delinquent land owners.
But it is supposed that a mistake of this sort would subject the owner to the consequences of further mistake in ascertaining the amount of taxes due on his lands. The fact is, that in this matter the commissioners are not guided by the name of the township in which the land is supposed to lie, but by the name of the warrantee. New townships are frequently erected out of old ones, and the lines of old ones are often altered; so that the township mentioned in the warrant is seldom the same as that in which the *374 land is found to lie. But a loss from this cause, if any should happen, would have to be borne by the owner, who could not complain of injustice, if he did not avail himself of the time allowed by law to repair the consequences of every mistake. In the case before us, however, there are features of peculiar hardship. By the mistake of the commissioners, the land in dispute was assessed twice in different townships; and the owner, who was ignorant of this, and made an arrangement with the commissioners, by which payment of the tax, as assessed by the officers of the proper township,, was to be postponed; but, in the mean time, the land was sold for the tax supposed to be due by the other assessment. In this there was no breach of faith; as the commissioners proceeded under a belief that these two assessments were made on different tracts; but, as there could be but one tax due, payment of which would discharge the land, notwithstanding it had been assessed twice, I was at first inclined to think the arrangement with the commissioners was equivalent to actual payment; and that the title of the purchaser was void, even according to the letter of the act of assembly. But it was not actual payment itself; and, on further consideration, I am satisfied that nothing less than actual payment will bring the owner within the only exception which is to be found in his favour. An owner who does not pay his taxes when they are due, is a defaulter, and an arrangement by which he gains further time is exclusively for his own benefit; he, therefore, and not an innocent purchaser, must bear any loss that may be caused by a breach of it. The case would be different between the parties to the arrangement; but it would be doubly unjust to permit the owner to recover after the expiration of two years, and deprive the purchaser not only of his twenty-five per cent. on the purchase money, but of the purchase money itself. But in giving a construction to a statute founded on principles of public policy, hardship in particular instances is to be disregarded. I am of opinion, then, that where the land is unseated, and a tax is actually assessed under colour of authority (which it seems to me the legislature intended to impart to the assessors in cases like the present;) nothing but proof of actual payment by the owner, will affect the title of the purchaser; and I concur that the other exceptions are not maintained, and that the judgment be affirmed.
Duncan, J.
Of the multitudinous propositions on which the opinion of the Court of Common Pleas was required, three only are worthy of notice. The first, the third, and the seventh in the long string embrace the whole merits.
The first is the want of assessment in the townships in which the land lies.
The second, whether the sale of the tract in the name of George Sevitz, the tract having been divided among sundry persons, and having been taxed to such persons in the commissioners’ books in *375 the proper townships, according to their several interests, and also taxed in the name of George Sevitz as unseated land in Porter township, several portions of it being seated, will confer a title on the purchaser at the end of two years.
And the seventh, that the plaintiff, not having shown title out of the commonwealth, cannot recover.
The decisions of this court, under former laws, with respect to sales of lands for taxes, have not been made either with favour or disfavour to any party: they have been construed with justice, and as like laws have been construed in the several states of this union, where such sales have been made. Difficulties in supporting these sales have arisen, but it arose from the laws themselves requiring forms to be observed in the assessment, returns, and sales, and a course to be observed, which courts of justice could not dispense with, or receive any substitute as an equivalent for that which the legislature had exacted. The decisions in Massachusetts have been uniform and various, — the principle of all the same, — that on a question of sale of lands for taxes, a strict execution of the law is required to be proved. The question is not between an individual and an officer, Who has acted in the execution of his office; but between a purchaser, who should look to the title, and one who would have owned the land, but for the operation of the statute on it. In that case, purchasers must show from the beginning that all the proceedings have been in strict conformity with the law. 7 Mass. 392. 8 Mass. 240. 9 Mass. 247. 10 Mass. 413, 488. 14 Mass. 320. 1 Pick. 112. In New Hampshire, Adams, 93. In Virginia, 1 Munf. 94. In Georgia, 4 Cranch, 402, Stead’s Executors v. Telfair, 1 Cranch, 402: and that case was finally decided in the Supreme Court of the United States, and it was there held, that which had been always decided, where a summary authority was given to any body of men, to divest a man of his freehold, that the person claiming under such authority must show that it was strictly pursued. So in Tennessee, in Francis’s Lessee v. Washburn, 5 Overton. The same doctrine has always been maintained in the Supreme Court of the United States, and nothing can be more convincing than the powerful reasoning of Chief Justice Marshall, in Thatcher v. Powell, 6 Wheat. 119. That case decides, that the execution by an officer of a power to sell land for taxes, must be in strict pursuance of the law bywhich it was made. The Chief Justice, in the conclusion of his opinion, thus expressed himself: “ That previous to an order of sale, it was required by the law, that the sheriff should return, that there were no goods of the delinquent, out of which the taxes could be made; and that in summary proceedings, where a court exercises an extraordinary power under a special statute prescribing its course, we think that course ought to' be exactly observed, and the facts which give jurisdiction ought to appear in order to show that its proceedings are coram judice, *376 Without this act of assembly, the order for a sale would have been totally void. The act gives the power only on a return to be made by the sheriff; the return gives the jurisdiction: without it the court is as powerless as if it had never been made.”
The fourth section of the act of the 13th of March, 1815, was designed to obviate difficulties arising from non-compliance with the forms of the acts, because it had been found, by repeated trials, that scarcely any proceedings had been so conducted as to stand the test of judicial inquiry. It gives two years after the sale to the owner, to redeem the land by tender of the money to the treasurer; and “ if it shall be refused, or in case the owner of the land so sold shall have paid the taxes due on them previous to a sale, then, and in either of these cases, the owner shall be entitled to recover the same by due course of law; but in no other case, and on no other plea, shall an action be sustained, nor shall any alleged irregularity in the assessment, in the process, or otherwise, be construed to affect the title of the purchaser, but the same shall be declared to be good and valid.” The owner has no just ground of complaint, being forewarned as he is by the law; if he will persist in his delinquency, the consequences be on his own head: he cannot after that avail himself of any irregularity in the assessment, or process, or otherwise. These irregularities shall not affect the title of the purchaser who holds the estate irredeemable and absolute: and here the difficulty arises, was the assessment only irregular or was it void l Would a sale for taxes, without any assessment or return by any assessor, in law or in fact, be unimpeachable after the two years ?
The act was not intended to validate every sale, made with or without authority, per fas aut nefas, but merely as I conceive, and it is an opinion not hastily formed, but with much reflection, to remove the danger to the purchaser from every kind of irregularity where the sale was made by an officer having authority to sell. Before I proceed farther in this enquiry, it is necessary to consider whether if this objection were available to the owner, it lay in the mouth of the defendant, an intruder and trespasser to make it, for it was on this principle that the Court of Common Pleas decided the cause. The main question they stated to be one of doubt and difficulty, which they considered not necessary for them to decide; they only decide that the defendant could not object that the sale was void, and conferred Ho title; and this was the error of the opinion: they decide it on the ground that the sale was void quoad the owner; and if it was void against the owner, it was void against all the world; and I cannot assent to the illustration of the learned judge, “that a younger warrant taken for and surveyed on lands before patented, is not against such patent of more validity than the voidest deed ever given by a treasurer and yet it will support an ejectment against a wrongdoer ; for there is nothing in the act, under which this sale *377 was made, nor in any other act of assembly changing the fundamental principle in the action of ejectment, that one in possession may set up the outstanding title of a third person ; so far from this, the act of the 13th of April, 1807, regulating proceedings on the new writ of ejectment, enacts “ that the defendant may defend on his own title, or the tillé of a third person.” The younger title can never prevail against the possessor who shows an elder subsisting title in a third person, unless indeed the defendant has actually dispossessed the holder of the younger title, and even in that case a very distinguished jurist, Chief Justice Spencer is of opinion, that a person who has forcibly entered upon the possession of another, is not precluded from setting up a title in a third person, Jackson v. Seely, 16 Johns. 200, unless the defendant is in a situation precluding him from setting up any title, and compelled from that situation, by the policy of the law, to surrender up the possession without regard to title, as tenant mortgagor defendant whose lands have been sold, on an execution issued against him, because in this case, he is estopped to deny the title by which he held ; but with these exceptions, and others falling within the same policy, the defendant may interpose the outstanding title of a third person. V^here one enters, as here, into the possession of unoccupied lands he may always do this; and the party who would change the possession, must show a title in himself to that possession; priority of possession may give just title against all but the owner. 2 Saund. 111. The policy of this is very apparent, it is better to protect the quiet possession of land against every person but the legal owner, than to encourage a struggle for possession bv a person having no colour of title. 1 Chitty's Plead. 142. The plaintiff in ejectment must always shoVv a title in himself to enter; in the outset he must prove a title in himself ;"it follows then if a defendant proves a title in any other person, he gives an answer to the plaintiff’s claim-.
The remedy by writ of ejectment contains this rudiment of the common law action. It is the very gist of the action by writ. The plaintiff' avers, in his writ, that the title is in him, and not in the defendant, so that neither at the common law, not under any act of assembly, can a man recover on a void title ; the defendant may show that the title is not in him, by showing it is in another: but I give the fullest assent to the opinion of the Court of Common Pleas, on the general construction of the act of March, 1815. The act they say “ is an attempt to enact that a purchaser at commissioners’ sale shall have a good title in two years from the sale. It is true it must be unseated ]and, and must be assessed, and taxes must be due and unpaid; and this was the intention of the legislature.” To this I add, that it is not an attempt to enact, but an enactment to that effect, and courts of justice are bound to give effect to it as such enactment, for they have no concern with the policicy op expediency of statutes ; they can neither make nor un *378 make the law, and if my judicial duty lead me to give an opinion on the policy or expediency of the law, for my own part, I have always thought it to be both just and wise to proceed on the principle of the necessity of assessment, before the authority of the treasurer to sell can attach. The inquiry is, was this land assessed de jure or de factor if it was, the act after two years pre-, eludes all inquiry into the regularity of the assessment of the assessors, as well of the valuation and assessment, as of. the return to the commissioners ; that it was an assessment de jure is not pretended; that it was not an act which is recognized by the law, as the act of an officer de facto, is the point on which I dissent from the opinions just delivered, and is the knot of the whole case, and if I could have brought my mind ever to doubt of this opinion as unanimity would have beeti very desirable on every question on this system of laws, so very interesting to the community, it would have become me to defer to the authority of the majority, but with every honest struggle I cannot, it is my duty to give that opinion, and to assign my reasons for it.
The assessors and assistants, by the act of the 11th March, 1799, are to be elected by the taxable inhabitants of each township for that township, and their duty, is the most important of all the ministers of the law concerned in taxation. It is the foundation of all other authority, to make a valuation of all the taxable property within the township trienally, and the return of this to the commissioners is the sine qua non of all taxation. It is the receipt of this return that calls into action the power of the commissioners to quota the townships; and consequently of the treasurers to sell. This valuation of the assessors is conclusive on the commissioners, for in 3 Yeates, 465, Commonwealth v. Dewees, it was decided that the valuation by the assessor, is binding on the county commissioners, they cannot revise or alter it, and it is only by the instrumentality of the assessors that a new valuation'can be made. The valuation and return, by the assessors of Porter township, of lands within Woodberry and Hopewell,wees, therefore not an irregularity which could be cured, but utterly void; it is as if none had been made, they had neither the form nor colour of office, as assessors of Woodberry and Hopewell, and without this colour there cannot be an officer defacto. Andrews, 163, a. Bishop of Ossorys’ Case, Cro. Jac. 554. 2 Rol. Rep. 130. Palmer, 130. If a bishop de facto, that is one in possession, grants institution and. induction this is good. And in Parker v. Kett, 1 Ld. R. 658. 12 Mod. 460, 470. it was held to be the possession, and reputation growing out of the possession, which gives the colour of legal authority.
The assessors of Porter had neither possession nor the reputation of officers as assessors of Woodbury and Hopewell. “ Doubtless,” said Lord Holt, “ a steward de facto may take a surren-der; he who hath the reputation of being steward, and yet is not *379 a good steward in point of law.” So those who are in-possession, exercising the functions of the office of assessors of a township, and are reputed to be such, though they are not good assessors in point of law, yet where there has been a sale on the assessment and return, after two years it could nevér be impeached on that ground; for every thing shall be presumed in favour of an officer de facto. Lessee of Blair v. Caldwell, 3 Yeates, 284.
The assessors of Porter township had never acted nor pretended to act, as officers of any other township, than' that for which they were elected. The office of assessors of Woodbury and Hopewell was full, filled by the proper officers, in the actual possession, exercising all the functions of their office, and exercising it on this very subject, legally exercising it, and legally returning their accounts to the commissioners. Had they been officers de facto, as was the treasurer of Bedford county, who had not taken the requisite oaths, the sales would have been good, as was determined in Riddle v. The Commisioners of Bedford County, 7 Serg. & Rawle, 392, without any relation to the legality of the appointment. It is not the misdescription of lands sold by the owner and paid for, and intended to be conveyed, but the township mistake, which might be rectified by other descriptions; nor does it resemble Grant v. Eddy, 2 Yeates, 150, where the commissioners had sold lands and received the purchase money. The act requiring certificates from justices of the peace of each county was only directory, and would not avoid the warrant, although there was no certificate at all, but an assumption of power by mistake in this one particular instance; this does not constitute an officer de facto. It is not the usurpation of an office, and therefore the act was as much a nullity as if it had been done by the assessors in Potter township in Centre county. The return of, valuation by the assessors of the proper township is the basis of all power in the premises, and without that all their proceedings were,as powerless as if the act had never passed. The land lies two miles from Porter township; it might as well for the purpose of jurisdiction have laid two hundred.
It is not every sale made with or without authority, seated or unseated, assessed or not assessed, but an'unseated and assessed tract, which non-redemption for two years renders unimpeachable. If it were so, then a sale by the commissioners of another county, by mistake, two miles out the line would be good; so it would b© good if the lands had been assessed in the proper township or county, if the taxes had been paid. Here it is not assumed, that the act was done by them as assessors of the townships where they were situated; but in another township. These acts are as much the acts of a stranger, as if they had been done by the doorkeeper of the commissioners ; and here I think, is the mistake,— this is the error, in confounding the acts of one acting under co-lour and in the name of the officer, as I, (with all respect, to those *380 who differ from me,) conceive, with the acts of an officer, mistaking the limits of his local and circumscribed jurisdiction. In the one case, the possession and colour of office might render them valid; in the other, they are ipso jure void, a legal non entity,— not irregular acts, but acts void at the time, by men neither having authority nor pretending to have authority in the district, but mistaking the boundaries of their jurisdiction.
The decision in this case may only affect this solitary tract, but it is the precedent, which I fear may let in evils; for it cannot stop there, but it may cure every thing. I do not know what act of omission of commission may not be construed a mere mistake of authority. Why should it not cover every thing, even a sale made in an adjoining county \yh°se lines are mistaken? a mistake as likely to occur as the mistake of township. And why should it not cover a mistake as to lands being seated or unseated? a mistake more likely to occur than in the boundaries of a township. If such a mistake could influence a decision in any case, it ought not in this; for the lands were known and rated in the commissioners and treasurer’s lists in the proper townships at the time of sale. This case shows the confusion that would follow from overlooking this mistake in boundaries; for the double entries, and the payment credited in the proper townships were with difficulty explained, and I can perceive the prejudice that may grise to the owner, though he has made inquiry and is prepared to pay his taxes, and who residing at a distance, may have sent mo.ney to his agent to pay them, who only would examine that township, and not look through the list.for every township in the county. The sale, under this view of the subject, I consider as void, being made without authority, and that the conveyance is void. The form of conveyance given in the act shows the intention of the legislature, that there should be an assessment, and an assessment in the proper township.; otherwise they would never have required a statement to be made in the conveyance, which was not a fact, and a fact necessary to authorise a sale. The prescribed form, where the sale is by the treasurer for the use of the county, is to show the jurisdiction, by the following recital: “ Whereas a tract of unseated lands, containing - acres, situate in-township and county of-has been rated and assessed with divers taxes, &c.” That the sale and transfer of lands, as assessed in Porter township, which do not lie in that township, can pass lands not in that township, not because there is a defect or mistake in the description, but a mistake in the authority to sell, is a thing which I cannot reconcile with justice or with reason, or the express provisions of this law.
If the clause in the fourth section, had stopped with the declaration that in no other case, and on no other plea, than tender to the treasurer within two years, or’previous payment of the taxes, should the owner sustain an action, that general provision might *381 have cured every thing ; but the clause goes further to explain the meaning of these general terms,- — in nó case and on no plea, — by enumerating the particulars, that no alleged irregularity in the assessment, or process, or otherwise, shall be construed to affect the purchaser: this would have been unmeaning, if every thing had been before covered with the general expression and intended to be so. It is as if the legislature had said, Wé mean by the words in no .case, and on no plea, irregularity in the assessment, process, or otherwise. Irregularity is where the act is done by an officer dé Jure, having the power but executing it irregularly, or of one de facto, exercising the functions off the office; but these assessors, it is admitted, neither had the power to assess lands in Porter township, nor did they intend^ or in fact exercise it, — all was done by them in mistake.
The general words in the clause are qualified by the enumeration of the particulars; this amounts to a specification, and is a construction which prevails as well in statutes as in our grants* If the treasurer was to sell on a different day from that prescribed by law, the owner would not be foreclosed at the expiration of two years, and yet why should the purchaser be affected by this mistake of authority, made in the assessment ? If. it was an irregularity, he would; but it not being an irregularity, but a mistake of authority, the act is void, and no time short of twenty-one years’ adverse possession could divest the owner of his right. I know nothing of the latent intention of the legislature, but as they have declared it, and I must construe their declarations by rules which govern in the construction of all other statutes. But a majority of the court being of a different opinion, it is necessary to consider the other exceptions.
The second does not sufficiently appear to rise out of the facts, and the court very properly refused to give any answer to it, as it was a matter not materialand the judge was not bound to answer any,question, except so far as it is material to the matter which the jury are to investigate. . However true the general pro. position maybe that the plaintiff in ejectment cannot recover without showing the title out of the commonwealth, yet here it appears that Stewart entered into possession claimihg title under A commissioners’ sale, made, as he alleged, of these lands, as the property, and warrant and survey aí Sevítz. The Court of Common Pleas considered him as a trespasser and intruder, not coming in under Sevitz’s Warrant and survey, and therefore that he could not set up that title; but from the evidence, it appeared that the defendant did claim under the warrant and survey of SevilZ, and showed the survey; and where both claim uhder the same title, the plaintiff had no occasion to draw his fight from a higher Source and go higher up the stream* I would not therefore reverse the judgment bn this objection, but my opinion is, that there is error in this record, and that the judgment'should be reversed.
Judgment affirmed.