## Burns *against* Lyon.

A bond for the surplus purchase money of a tract of unseated land sold for taxes, filed in the prothonotary's office, may be given in evidence in an action of ejectment for the land, without the common law proof of execution.

An adjournment " from day to day" is from one day to its succeeding day. But although the act of assembly authorizing the sale of unseated lands for taxes provides for an adjournment of the sale " from day to day," yet a title is good which is founded on a sale made by adjournment to a certain day which did not immediately succeed the first. The uniform practice in Pennsylvania requires this construction.

One who has conveyed land by deed containing a special warranty, is a competent witness for his vendee in an action of ejectment for the same land.

Whether the land claimed by a plaintiff in ejectment by virtue of a treasurer's deed be the same that was assessed, taxed and sold, is a matter of fact to be determined by a jury.

A purchaser of unseated land from the treasurer has a good title, although his surplus bond never was filed.

ERROR to the common pleas of *Mercer* county.

This was an action of ejectment by the heirs of Joseph Lyon against George Burns and others; the facts of which, in connexion with the questions raised, are fully stated in the opinion of the court.

*Banks,* for plaintiff in error, contended, that the execution of the bond should have been proved, and on this point cited, Young *v.* The Commonwealth, 4 *Binn.* 116; Dunn *v.* The Commonwealth, 14 *Serg. & Rawle* 431; Pettit *v.* M'Adam, 2 *Serg. & Rawle* 420: that the grantor on the special warranty was not a competent witness; Christine *v.* Whitehill, 16 *Serg. & Rawle* 112 : that the assessment was uncertain and defective; Erwin *v.* Helm, 13 *Serg. & Rawle* 151; 1 *Watts* 538 : that the surplus bond must be delivered and filed; Sutton *v.* Nelson, 10 *Serg. & Rawle* 239 ; 1 *Watts* 42.

*Pearson,* for defendant in error, cited, Stewart *v.* Shoenfelt, 13 *Serg. & Rawle* 369; 1 *Watts* 504.

The opinion of the Court was delivered by

ROGERS, J.—This was an ejectment for two hundred acres of land, in West Salem township. The plaintiffs claim title by deed from the treasurer of Mercer county to William Scott, dated the 29th of December 1816, " for a certain unseated tract of land situate in the township of West Salem, in the county of Mercer, containing two hundred acres, more or less, advertised in the name of James Dowling, as the reputed owner, charged and assessed with county and road tax for the years 1814 and 1815. The plaintiff gave in

evidence (after objection made and overruled) the duplicates of un-seated lands for West Salem township for the year 1814, as follows: "county tax, unseated land, part of tract settled, by James Dowling's tract, two hundred acres, 1 dollar 40 cents." Road tax for the same year, "part of James Dowling's tract, two hundred acres, 1 dollar." Also the duplicates of unseated lands for said township for the year 1815, as follows : "county tax, unseated land, settled by James Dowling, two hundred acres, 1 dollar 40 cents." Road tax, headed as follows: "being part of tracts settled by the following persons." "The residue of James Dowling's two hundred acres, 1 dollar."

The plaintiff then offered in evidence the bond of William Scott, dated the 24th of December 1816, for the surplus purchase money, amounting to 1 dollar 32½ cents; and proved that the bond was taken from the bundle filed in the prothonotary's office, labelled "John Wright's bonds for 1816." The defendant objected to the bond be-ing given in evidence, because there was no proof that it was filed in the prothonotary's office according to law ; nor when it was filed ; and because it was not proved by the subscribing witness. The court overruled the objections, and admitted the testimony. In considering the validity of the objection, we must take the case as it appeared to the court when the decision was made ; for it would be treating the court unfairly on a question of evidence, if we were to advert to facts which may have been proved in a subsequent stage of the cause.

The act of the 3d of April 1804 directs the sheriff or coroner, and a subsequent act the treasurer, to file the surplus bond in the office of the prothonotary of the proper county, but it gives no directions when or how it shall be filed. It is, however, the duty of the officer to file it immediately ; for by the fourth section of the same act it is directed that the bonds so taken for surplus moneys shall be a lien on the land from the date of the deed for five years. Justice, then, to the owner would seem to require that the bond should be filed at the time the deed is delivered ; that the owner of the property may have the benefit of this provision made in his favour. In the case at bar it appeared to the court that the bond had been filed among the surplus bonds which were labelled "John Wright's bonds for 1816;" and this we think a sufficient filing to preserve the lien to the owner of the land. It is *prima facie* good. The court, then, under these circumstances, were bound to believe that the bond was filed, and also that the officer had done his duty and filed it in due time. But if filed in due time, had it such an official character as to enti-tle it to be read without proof of its execution and delivery by the subscribing witness? It is true that the filing of the bond does not make it a record, in the strict sense of the term, with all the quali-ties of a record ; yet, by the act, when filed, it binds the land sold as effectually and in like manner as judgments, into whose hands or possession soever the same may come. It is in the nature of an

[Burns v. Lyon.]

official bond, which is evidence without more ; subject, however, to be disproved. The act provides that the owner, if the money be not paid within three months, may bring suit on the bond; and surely the act never intended that he who is frequently a stranger to the execution of the bond, should be compelled to give evidence of its execution by the subscribing witness, of whose existence he may not be informed. It is sufficient, *prima facie*, for him that such a bond, purporting to have been taken in pursuance of the directions of an act of assembly, is found among the records of the court. But it is said that the defendant may plead *non est factum*, which would put the plaintiff on proof of the execution of the bond. Now, whether this would be so or not, it is unnecessary to determine ; it is sufficient that here *non est factum* has not been, nor can it be pleaded. If proof had been given in this stage of the proceeding that the bond had not been filed according to law, or circumstances had appeared from which a reasonable ground of suspicion could have been raised that there was any thing unfair in the transaction, a different case would have been presented ; but in the absence of all proof of the kind, we think the court was correct in admitting the testimony ; and this course is in accordance with the uniform practice.

The case of Young *v.* The Commonwealth, 4 *Binn.* 114, differs in a material respect from this. In that case the exemplified copy from the secretary's office, upon the plea of *non est factum*, was held not to be admissible in evidence, because it did not appear that the act of assembly had been complied with. The act directed that the recognizance bonds shall be taken and duly recorded by the recorder of deeds of the proper county, and when so taken and recorded shall be by him indorsed as duly recorded, and forthwith transmitted to the secretary of the commonwealth, who shall file the same in his office, and that copies, under the hand and seal of office of the said secretary or recorder shall be admitted as legal evidence, &c. The case is decided on the principle that when an act of assembly makes innovations on established rules, its positive directions must be precisely pursued ; and that not having been done, the copy of the bond could not be received in evidence. Dunn et al. *v.* The Commonwealth is decided on the same principles, that a certified copy of the sheriff's official bond is not evidence if it does not appear to have been taken by the recorder of deeds.

It is supposed that Pettit *v.* M'Adam has a bearing on this case ; but there the chief justice put it on the ground that it was not a record of the quarter sessions; and I cannot perceive how it should have been so treated, as the act does not direct that the bond should be filed.

The plaintiff then offered in evidence the deed of John Wright, dated 24th of December 1816, having given the evidence as before stated. This evidence was admitted, and the defendants excepted on two grounds. First, that there was no evidence that the purchaser had given a bond in compliance with the act. Second, that

the treasurer had no authority to make the sale on the day it was made. The first is the same as the objection already disposed of. The second is, that it is the duty of the treasurer to adjourn his sales from day to day, without a day intervening. I am not aware that any judicial construction has been given to the words " from day to day:" although the practice has been to adjourn from one day to another certain day ; and it would be dangerous to titles to disturb a practice which has been pursued, it is believed, in every county in the state. Day by day, according to Webster, means daily, every day, each day in succession, continually, without intermission of a day; whereas, but, or only from day to day, means without certainty of continuance, temporarily.

The next objection is the admission of William Scott as a witness, on the ground of interest. William Scott purchased the property at the treasurer's sale, but transferred it to John Williamson, under whom the plaintiffs claim by a release dated the 5th of February 1823. This release contains a special warranty, so that whatever success may attend this suit, I cannot perceive any interest in Scott to exclude his testimony.

But the plaintiff in error complains that there was error in the answer to his first, second and fifth points.

1. That the assessments given in evidence by the plaintiffs as the foundation of their title, are void for uncertainty.

2. That upon the assessments and deed given in evidence by the plaintiffs for two hundred acres of land, part of a larger tract, they cannot recover, unless they have proved to the satisfaction of the jury that they made an election, before suit brought, of the land claimed by them by virtue of said purchase.

The court refused to say that the assessments were void for uncertainty, and referred it to the jury to say whether the land assessed was the same as the land in dispute. The land was assessed, " unseated land, part of tract settled, by James Dowling's tract, two hundred acres, 1 dollar 40 cents." Road tax for the same year, " part of James Dowling's tract, two hundred acres, 1 dollar." This was for the year 1814. And for the year 1815 it was assessed as follows : " county tax, unseated lands, settled by James Dowling, two hundred acres, 1 dollar 40 cents." Now by this I understand it was a tract of land consisting, say of four hundred acres, on which James Dowling resided, part of which was settled, but the remainder of the tract had been thrown out as unsettled and as such was taxed as unseated land. This was a sufficient designation of the property taxed, and if it applied to the land in dispute, which the jury have found, it gives title to the plaintiffs. The assessment is as certain as in Stewart *v.* Shoenfelt, 13 *Serg. & Rawle* 369 ; and in this case, as in that, the only question could be, whether on the whole the tract of land claimed by the plaintiffs and that conveyed by the treasurer, were identified. So in Erwin *v.* Helm, 13 *Serg. & Rawle* 154, the court say, that it is the *intention* of the legislature to subject each original tract to assessment as

[Burns v. Lyon.]

a whole ; for if a settler were on any part of it, it could with no propriety be said to be unseated.　To this there are two exceptions, and these are the same in principle.　If a part be conveyed to a person who resides on it, the remainder may be assessed and sold as unseated; so if joint tenants, or tenants in common make partition, and only one of the purparts be seated.　The act of the 20th of March 1812 also makes provision for cases where there is an actual settler.　The property is assessed as seated by the assessor, but the residue of the tract·is returned as unseated, and may be assessed either in the name of the warrantee, if known, if not, in the name of the person claiming by agreement.

The court also charged the jury that if they were satisfied that the assessment and treasurer's deed referred to the land in dispute, the plaintiffs had shown a good title.　In this there was no error; for this was the case of a regular assessment and sale of the land; and whether the surplus bond was filed or not was of no consequence, as the plaintiff's title was good notwithstanding.　A neglect to file a surplus bond does not affect the title, as has been already decided.　If the jury were satisfied that a surplus bond had been given, of which there was evidence, and also that the assessment applied to the land in dispute, the plaintiff had made out a *prima facie* case of title to which the doctrine of election could not apply.

Judgment affirmed.