# M'Cord *against* Bergautz.

If a tract of two hundred and fifty acres of land be assessed and sold for taxes by the treasurer as one hundred acres, and the purchaser measure off and take possession of one hundred acres of the land, he thereby acquires such a title as will enable him to redeem the land and preserve his title from a subsequent sale of it for taxes.

A power of attorney to sell land is a good authority to the attorney to redeem it when sold as unseated for the payment of taxes.

ERROR to the common pleas of *Mercer* county.

Robert M'Cord against Peter Bergautz.

This ejectment was brought by the plaintiff to recover the possession of two hundred and twenty-five acres of land. The defendants have taken a special defence for one hundred acres of land as sur-

veyed and run off on the northeast corner. It is a contest between a purchaser at treasurer's sale, and a purchaser from the county commissioners, who, as authorized and required by the act of assembly, had purchased at a sale made by the county treasurer for arrears of taxes. The plaintiff gave in evidence the assessment of county and road taxes for the year 1830 to the amount of 7 dollars 93 cents, by which it appears to be assessed as two hundred and twenty-five acres in the name of William Gravatt; a deed from David Porter, treasurer, to Robert M'Cord for the two hundred and twenty-five acres of land, assessed and rated in the name of William Gravatt, dated the 6th of June 1832, sold for 205 dollars; bond for the surplus money, 194 dollars 40 cents. William Gravatt, a witness for the plaintiff, proved that he claims one hundred acres; that he does not know how much is in John Gravatt's survey. Mr Hunter proved that there are four hundred acres in each tract; that there are two hundred and fifty acres on the northeast corner; and that those two hundred and fifty acres embrace Bergautz's one hundred acres.

On the part of the defendant, the assessment of county and road taxes for the years 1822 and 1823 was given in evidence, by which it appears that one hundred acres of land, the residue of the tract settled by William Gravatt, are assessed with county and road taxes for the years 1822 and 1823. A deed from Robert Stewart, Esq., treasurer, to the commissioners of Mercer county, dated the 21st of October 1824, for the one hundred acres of land, assessed as the residue of the tract settled by William Gravatt, sold for 4 dollars and 50 cents. A deed from the commissioners of Mercer county for the same land to Hugh Carson, dated the 16th day of February 1830. A deed from Hugh Carson to Rowen M. Carson for the same land, dated January 1832. A deed from Rowen M. Carson to Peter Bergautz, dated the 3d of January 1832. Receipt of T. Porter, treasurer, to George Carson, dated the 4th of October 1833, for 13 dollars 25 cents, redemption money for two hundred and twenty-five acres of land, the same for which this ejectment is brought. Power of attorney from Rowen M. Carson to George Carson, dated the 4th of October 1833. Mr Hunter, called by the defendant, proves that Bergautz is on the one hundred acres in the northeast corner; when Mr Bergautz went on it witness surveyed the one hundred acres, and surveyed it off as they directed. Daniel Williams proves that Mr Bergautz has been living on the land three or four years.

The court below was of opinion, and so instructed the jury, that the plaintiff was not entitled to recover.

*Pearson*, for plaintiff in error, cited, 4 *Watts* 366; 13 *Serg. & Rawle* 151, 369; 2 *Watts* 436.

*Holstein*, for defendant in error.

[M'Cord v. Bergautz.]

The opinion of the Court was delivered by

HUSTON, J.—The plaintiff here was plaintiff below.   I shall refer to the statement of the case for the facts.   The questions arising on the record are said to be of the first impression, but perhaps are not entirely so.

A great portion of the land north and west of the Ohio and Alleghany is occupied by persons who, by contracts with the holders of the warrants, are to become owners of a portion of each warranted tract, in consideration of their having made and completed the actual settlement required by the act of 1792 or its supplements, or by those who intend and expect to hold part of the tract on which they are settled under the act of the 20th of March 1811.

. These settlers considering it a hardship that they were liable for the tax assessed on the whole, they only claiming a part, the act of the 20th of March 1812 was passed, authorizing the assessors and commissioners to assess the part belonging to the warrantee as unseated land, where it was actually so, and sell it as unseated land. The present case arises on a sale, or two sales, of this residue of a tract on which a man called William Gravatt is settled, and has long been settled.   There has been no question here, or, so far as we see, in the court below, as to the regularity of the proceedings on which either of the sales was made, except in one particular, viz. the description of the land sold ; and the alleged defect in the description is as to the quantity or number of acres sold and conveyed to the respective purchasers.   In each case it is assessed and conveyed as the residue of William Gravatt's tract; but in the first sale, under which the defendant claims, it is called one hundred acres; in the second assessment and sale it is called two hundred and twenty-five acres; and the real quantity was proved to be two hundred and fifty acres.

Our reports show several contests arising from sales on account of description alleged to be defective or erroneous.   In 13 *Serg. & Rawle* 369 the tract had been assessed always in the wrong township.   Stewart, who objected to the sale in question there, had bought (and his only right depended on such purchase) at a former sale for taxes, as being in the township in which it had been sold in that case ; yet the sale was affirmed there on the words and spirit of the act, which directed it to be assessed in the township, *if known*, where the land lay.

In the purchase of 1784, and east of Alleghany river, the warrants are all numbered, in addition to the name of the person to whom the warrant is granted ; and the donation lands are all designated by the district of the surveyor, by the range and number in which each tract lay.   The fifth section of the act of the 3d of April 1804 provides that the sale may be good though the land is not sold as the property of the man who, at the time, is the owner ; and it has been held that the designation by the number (if in the parts of the state above named) will make the sale valid.   16 *Serg. & Rawle* 560.

VII.—2 R

[M'Cord v. Bergautz.]

The act directs the sheriff (now treasurer) *to sell the whole or any part* of a tract of unseated land which he may find necessary for the payment of the taxes. And we had several cases arising on the construction of this clause of the act. In Coxe *v.* Blandon, 1 *Watts* 539, this matter was fully considered. The cases were all reviewed, and the conclusion is, that where a part is sold, the purchaser has the unrestrained choice in selecting it, as a necessary incident of the sale and consequence of a reasonable interpretation of the statutes.

All the cases from Stewart *v.* Shonefelt, in 13 *Serg. & Rawle* 369, to this time, and there are many, say that the law forbids us to declare a sale void in consequence of any irregularity in the assessment. The only irregularity in the assessment and sale under which the defendant below claimed is a mistake in the quantity. The assessment and sale were of one hundred acres, and he measured off that quantity in a manner which is not objected to, and which, according to the case last cited, could not be objected to.

From the record and whole course of the discussion, neither the court below nor this court are called on to say what would be the law if Bergautz, instead of electing and claiming the quantity purchased and sold, viz. one hundred and fifty acres, had claimed the whole two hundred and fifty acres. He only claims one hundred; he measured off that quantity, and has taken defence for that quantity. If an assessor would assess a four hundred or a one thousand acre tract as one hundred acres, it might be difficult to say and impossible to prove whether this was mistake or fraud. It is supposed the tract may sell for more than the taxes and costs, and for the overplus the purchaser gives a bond to the treasurer for the use of the owner. Now we must suppose four hundred would sell for more than one hundred acres; of course the overplus belonging to the owner would be more than if all passed under a sale of one-fourth the quantity. It is not intended to give an opinion on such a case. Variations from the actual quantity are of constant occurrence. The assessors and commissioners seem to have considered that at the first they had by mistake taxed and sold unintentionally a part of a tract, and that the residue had not been taxed; and they assess and sell it, and again mistake the quantity by making it too large. The purchaser, however, will hold, or would have held if part had not been redeemed.

It has been shown that a sale may be good although not taxed in the name of the present owner. It will be good if a tract all unseated has been divided so that two men each owned a distinct part. No one can redeem but the owner or some one for him. Hooe *v.* M'Bride, 2 *Watts* 436. Perhaps an owner of an undivided part might redeem for all, if they all ratified his act.

But perhaps, in the true spirit of that decision and of the law, where two own distinct parts, each or any one of them may redeem his own part. The defendant here, or those under whom he claimed,

[M'Cord v. Bergautz.]

might redeem what was his own, and he does not claim to have done more.

Rowen M. Carson was the owner at the time of the sale; and on the 4th of October 1833 he gave a power of attorney to George Carson to sell the one hundred acres, describing it, and make a conveyance, and receive payment and give a receipt, ratifying and confirming all he might do in the premises. On this same 4th of October George redeemed the tract by paying the proper sum to the treasurer. On the 5th of October 1833 he sells to defendant. We have no doubt the power of attorney gave him full authority to redeem, and there was no error in the court saying so. The power to sell and convey a tract of land must give a power to pay taxes to save it from being sold, or to redeem if sold. It implies power to do lesser matters for the benefit of the owner. It is absurd to say you trust a man to exercise the most extensive authority over land for your benefit, but he must not save it from utter loss. Besides, his acts are ratified by the subsequent conduct of his principal; at least we must take it so, as the defendant relies on their validity.

Judgment affirmed.