## Xander et al. *versus* Commonwealth for use, &c.

1. In a suit upon a guardian's bond, the bond is admissible in evidence though it contain material erasures apparent on its face. It will be presumed, in the first instance, subject to rebuttal, that such erasures were made before delivery and approval.

2. Such a bond being a statutory obligation, and the basis of the guardian's appointment and credit, no collateral agreement between the obligors at the time of execution can affect its legal force. Fraud practiced in obtaining the signature of a surety is no defence by him in a subsequent suit on the bond.

3. Therefore, in such a suit, it is no defence by a surety that his signature was procured upon condition that A. should sign as co-surety, and that after execution by both, but before approval by the court, the name of A. was erased.

4 The approval by the Orphans' Court of a guardian's bond is an adjudication that the bond is valid in all respects; and in a subsequent proceeding it will be presumed that erasures or interlineations apparent on its face were made before approval and were satisfactorily explained.

[Xander v. Commonwealth.]

5. Where one by misplaced confidence enables another to commit a fraud, he must, as against an innocent party in interest, suffer the loss occasioned thereby.

February 27th 1883.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Berks county:* Of January Term 1883, No. 279.

Debt, by the commonwealth of Pennsylvania, for the use of Nathan S. Kemp, guardian of Isabella Hill, against George A. Xander, J. B. Potteiger, D. H. Fink and J. H. Jacobs, upon a bond for $400, given by the defendant Xander as guardian of Isabella Hill, and by the other defendants as sureties.   The name and signature of the defendant Jacobs was erased by penmarks drawn through the same on the face of the bond.

The case was referred to arbitrators, who found for the plaintiff, except as against the defendant Jacobs, and as to him they found " no cause of action."   This release of Jacobs became absolute by the omission of the plaintiff to appeal from the award.   The other defendants appealed to the Common Pleas ; Xander pleaded nil debet and Potteiger and Fink pleaded non est factum.

On the trial, before SASSAMAN, J., the plaintiff, Kemp, having proved his appointment as guardian of Isabella Hill, in place of said George A. Xander, and that upon the settlement of the account of the latter as guardian, a balance of $707.80 remained due by him to the ward, which he had failed to pay over, offered the bond in evidence, to which the defendants objected :

1. " That the bond declared upon is the bond of George A. Xander, guardian, &c., with J. B. Potteiger, D. H. Fink and J. H. Jacobs as sureties, and not the bond of the said Xander with the said Potteiger and Fink as sureties.   The offer therefore is of a bond different essentially from the one declared upon."

2. It appears upon the face of the bond that there have been material alterations in the bond since the execution thereof, to wit: the erasure of the name of one of the sureties who signed the bond, and whose name appears in the body thereof also erased, which alterations avoid the instrument as to parties not consenting thereto, and the bond is not admissible until evidence has been offered to show the consent of all the parties affected, to such alterations."

By the Court:   " The present question before us is one of admissibility, and not one of liability.   Under our rules of court, notwithstanding the plea of non est factum, in the absence of an affidavit or possibly a special plea accompanied by an affidavit of facts, attacking the execution of the bond or

[Xander *v.* Commonwealth.]

alleging positively circumstances of actual and complete defence in bar, we fail to see why this bond should not now go in evidence allowing the defence to show matters of avoidance, if if there are any." Objection overruled. Exception.

. Defendant offered to prove by J. H. Jacobs, the witness on the stand, that D. H. Fink signed the bond in suit at the instance and request of the witness upon the express condition and stipulation, that the witness should also sign as . surety together with D. H. Fink, one of the defendants, pursuant to the stipulation and condition, and at the same time and place; that subsequently without the knowledge or consent of Fink, and in his absence and without notice to him, the name of the witness was erased from the bond by direction of Judge KESS-LER, an associate judge of the court, and that he has been released from all liability.

Objected to:

1. Because it is incompetent and irrelevant.

2. Because an official bond of record is record itself, and cannot be changed or restricted in its terms by parol testimony.

3. Because where erasures occur in a guardian bond or record, if they be at all allowed, the erased writing is simply to be left unread, and such erased parts cannot be used as a means of construing a guardian bond or record.

By the Court: "To permit evidence which would work a discharge of the sureties of this bond would produce a great wrong. If the facts were as claimed here it would seem to me there was great dereliction on the part of officers in this court. Certainly, however, the Commonwealth of Pennsylvania, to whom this bond was given, is no party to any private arrangements between the sureties thereto. The bond taken under our laws, is for the protection of orphans, who in some sense, are the wards of the Commonwealth, and such bonds may be sued to their use if the trustees appointed as the agents of the state for that portion of its citizens who are non sui juris, need the protection of the security. At this time I fail to see any arrangement between the obligors to a bond such as this, without the proper agents of the Commonwealth being privy thereto, can or should be allowed to be given in evidence to defeat the ward and deprive her of the protection for which the bond was originally executed. There was great looseness in this business, and it would not seem right, that the previous wrongs in this matter should be used in evidence to sweep away the small security of this ward's estate." Objection sustained. Exception.

The defendants presented the following point:

"There can be no recovery in this case by the plaintiff, because there is a fatal variance between the declaration and

the proof. The bond as sued upon, being a joint one, plaintiff must recover, if at all against all the parties sued, and as it appears on the face of the bond in evidence the name of J. H. Jacobs, one of the obligors, was erased or stricken off, and the action embraces him as a defendant—there can be no recovery by the plaintiff, and the verdict must be for the defendant." Negatived.

The court charged the jury as follows:—"My ruling on the offers of evidence and on the points presented to me by the counsel for the defendants, leaves you no further service in this case, than to render your verdict in favor of the plaintiff for the face value of the guardian bond put in evidence by the plaintiff. There is no evidence admitted in the cause on the part of the defendants. The penal sum in the bond is $400, and that may be the amount of your verdict."

Verdict, accordingly, for the plaintiff for $400, and judgment thereon. The defendants took this writ of error, assigning for error the rulings on evidence, the answer to their point, and the instruction to find for the plaintiff, as above set forth.

*Richmond L. Jones* and *Adam H. Schmehl,* for the plaintiffs in error, cited : Smith *v.* Weld, 2 Barr 54 ; Neff *v.* Horner, 13 P. F. S. 330 ; Getty *v.* Shearer, 8 Harris 15 ; Smith *v.* United States, 2 Wallace 219 ; Miller *v.* Gilleland, 7 Harris 122 ; Sharp *v.* United States, 4 Watts 21 ; Mears *v.* Commonwealth, 8 Watts 223 ; Bradley *v.* Commonwealth, 7 Casey 522 ; Fertig *v.* Bucher, 3 Barr 308 ; Warfel *v.* Frantz, 26 P. F. S. 88; County of Schuylkill *v.* Copley, 17 P. F. S. 386.

*D. N. Schaeffer* and *H. H. Schwartz,* for the defendant in error, cited : McKee *v.* Commonwealth, 2 Grant 23 ; Butler *v.* United States, 21 Wall. 272; 14 Amer. Law Reg. N. s. 521.

Mr. Justice CLARK delivered the opinion of the court, April 2d 1883.

The bond upon which this suit is brought is the official bond of Geo. A. Xander, guardian of Isabella Hill, given under the Act of 29th March 1832, at the date of his appointment, on the 4th day of April 1868, in the Orphans' Court of Berks county. Having been approved by the court, this bond was filed in the office of the clerk, in trust for all parties interested ; it is in the penal sum of $400, and is in the exact form and words directed by the statute. The name of J. H. Jacobs, written in the body of the bond, and subscribed as one of the sureties, was in both places erased.

The guardianship account of Xander, confirmed 26th April 1879, exhibited a balance due the ward, of $707.80 and Na-

[Xander *v.* Commonwealth.]

than S. Kemp, having been appointed guardian of said ward, brought this suit on the 30th July 1879, against Geo. A. Xander, J. B. Pottieger, D. H. Fink and J. H. Jacobs, to recover the said balance. The cause was submitted to arbitrators, and an award was found in favor of Jacobs, but against all the other defendants. An appeal was taken by Xander, Pottieger and Fink, and from that time the suit has been maintained against them only : at the trial in the court below, the jury was sworn to try the issue as against them, and the verdict was rendered accordingly. The name of J. H. Jacobs was embraced in the action by a clear mistake, and the record should have been formally amended, by striking off his name. Under the recent statutes, in such case, it is the right of the parties to strike out the name of either plaintiff or defendant, to secure a trial upon the merits : Kaylor *v.* Shaffner, 24 Penn. St. 489 ; Prescott *v.* Boro' of Duquesne, 48 Penn. St. 118 ; Rangler *v.* Hummel, 37 Penn. St. 130 ; Jackson *v.* Lloyd, 44 Ibid. 82 ; Cochran *v.* Arnold, 58 Ibid. 399 ; Westcott *v.* Edmunds, 68 Ibid. 34. The action being thus amendable, this court will not reverse on that ground, but will treat the record as if amended : Robertson *v.* Reed, 47 Penn. St. 115 ; Trego *v.* Lewis, 58 Penn. St. 469 ; Westcott *v.* Edmunds, 68 Penn. St. 34.

The official bond of a guardian is made, executed and delivered in the Orphans' Court, and its approval by the judges is an adjudication upon it. It is not executed in the presence of, nor delivered to, the parties interested. The court is the instrument of the law to require, receive, approve and take charge of the bond, in trust for the parties in interest who are non sui juris, and it must be presumed, in the first instance, that the court fully performed the duty imposed by law, in the examination of the essential features of the bond. The genuineness of the signatures, the sufficiency of the sureties, the erasures and interlineations, with other matters material to its validity, were proper for the judgment of the court, and are presumed to have been satisfactorily established and explained.

When approved and filed with the decree, the bond forms part of the record of the proceedings of the court, and there can, of course, arise no presumption that the record, or any part of it, has been fraudulently altered by those having it in charge. We must therefore in the nature of the case allow the presumption, that the bond found in the files of the court, is the bond which the court approved, and that the alterations, if any, were made by the obligors, before delivery or presentation for approval. It is undoubtedly true, as held in Smith *v.* Weld, 2 Barr 54, and many other cases, that "any alteration or addition, in a material or immaterial part of a bond, by the obligee, without the consent of the obligors, avoids the whole deed ; and

[Xander v. Commonwealth.]

when the alteration is apparent on the face of the instrument, and non est factum is pleaded, before it is proper to admit it in evidence the consent of all the obligors must be shown, at least some evidence must be given from which their assent may be implied." Nor can it be disputed that the plea of non est factum goes to the state and condition ot the bond when the plea is pleaded as well as when it was sealed and delivered, it puts in issue the execution of the bond and its continuance as the deed of all the parties to the time of the plea.

But it will be observed that in this case the alteration is not only presumed from the nature of the bond and the circumstances attending its execution to have been, but in fact was, made before delivery, not by the obligee, but by the obligors themselves; and there must necessarily always be a broad distinction between an alteration made, with the knowledge of the holder, after the making of the bond, and one made before, and without his knowledge, as a bond or other deed only becomes such after it leaves the control of the party to be bound by it, and comes to the hand of one who can enforce it.

The court, in suffering the bond to go in evidence to the jury, does not decide the issue, or that the bond as altered is the deed of the defendant, but simply that some proof has been given, from which the fact of its execution may be fairly inferred; it is not necessary that an alleged alteration shall be fully accounted for, before the deed shall be read to the jury, it is sufficient if evidence is given from which the fact may be presumed that the alteration was made before delivery.

Nor are we of opinion that the defendant below, had so complied with the rule of court as to entitle him to an objection, to the admission of the bond in evidence. An affidavit of defence, unless otherwise provided by rule is only intended to prevent judgment by default; this done, the affidavit is functus officio, its purpose is single and specific, it is no part of, nor connected with, the pleadings, it does not discharge any office, save that only for which it was designed: Sullivan v. Johns. 5 Wharton 366; Erwin v. Leibert, 5 W. & S. 103; Rodgers v. Kichline, 28 Penna. St. 231; Finlay v. Stewart, 56 Penn. St. 183.

We are clearly of opinion, therefore, that the court was right in receiving the bond in evidence, and in calling on the defendant below to answer the liability which it with other evidence in the cause prima facie established.

Nor are we of opinion that the court erred in refusing the defendants' offer, to prove that Fink signed the bond upon condition that Jacobs should also sign, and that Jacobs' name was afterward erased without Fink's knowledge or consent.

It is undoubtedly true that the bond, as filed, is only prima

facie evidence of execution, and the defendants may rebut by
proof of forgery or other proper defence, but we do not regard
the matter contained in the offer as adequate for that purpose.
The bond which was signed by the defendants is a statutory
bond, the object and effect of which were, of course, well known
to the obligors, whilst its particular conditions are copied from
the statute and written on its face. The statute fully defines
the rights and responsibilities of the parties, and the court as the
mere instrument of the law in taking the security, was without
power or discretion to restrain its provisions or limit its oper-
ation. No collateral agreement between the obligors can affect
its legal force. The bond, as taken by the court, is the basis of
the guardian's appointment and credit, by force of which he
enters into the possession and control of the ward's estate, and
if any deceit or fraud was practiced in procuring the signatures
of the sureties, the effects of that fraud cannot be visited upon
the ward, who was no party thereto, and could not therefore be
affected by it. If Fink's agreement with Jacobs was as he al-
leges, and as he offered to prove, he should have attended at
the adjudication of the security, to see that his agreement was
complied with; if he failed in this, and entrusted the paper to
Jacobs he thereby made Jacobs his agent for the delivery of
the bond : Ogle *v.* Graham, 2 P. & W. 132; Sigfried *v.* Levan,
6 S. & R. 308; Wiley *v.* Moor, 17 S. & R. 438; Patterson *v.*
Patterson, 2 P. & W. 200; Beary *v.* Haines, 4 Wh. 20. He
must therefore accept the consequences of his own act. If ob-
jection had been raised when the bond was presented for ap-
proval, or an application made at any time before Xander's in-
solvency, the court would have taken such action as would have
protected Fink from loss. Instead of this, Fink entrusted this
whole matter to Jacobs, who was Xander's attorney, and thereby
became Fink's agent; and if Jacobs deceived him, he deceived
the court also, and Fink must have recourse to Jacobs for re-
dress, and not against those whom the bond was taken to secure.
The rule is a familiar one, and well settled in such cases, that he
who puts it in the power of another to commit a fraud must
bear the consequence : where one of two parties who are equally
innocent of actual fraud must lose, the one who by misplaced
confidence in an agent or attorney has been the cause of the
loss, shall not throw it on the other : Penna. R. R. Co.'s Appeal,
5 Norris 80 ; Mundorff *v.* Wichersham, 13 P. F. Smith 87 ; or
as Judge KING has well expressed this principle in the Bank
of Kentucky *v.* Schuylkill Bank, 1 Parsons Eq. Rep. 248., the
true doctrine on this subject is that where one of two innocent
persons must suffer from the tortious act of a third, he who
gave the aggressor the means of doing the wrong, must alone
bear the consequence of the act.

[Kindt's Appeal.]

We are of opinion therefore that there was no error in the trial of this cause, and the

Judgment is affirmed.