## Cochran, Appellant, v. McGeorge.

*Sale—Contract—Warranty—Stallion—"Breeding mares."*

1. In an action on promissory notes given for the purchase price of a stallion sold under a guaranty that the stallion would "get sixty per cent of all breeding mares in foal," the court will not say as a matter of law that the words "breeding mares" mean only such mares as had been known to produce foals, but will leave it to the jury to determine under the evidence whether the words did not mean such mares as were served by the stallion for the purpose of getting them in foal.

*Practice, C. P.—Evidence—Rules of court.*

2. In the absence of a rule of court on the subject, the defendant may offer in evidence any competent matter as a defense, although such matter has not been set forth in his affidavit of defense.

*Contract—Sale—Return of chattel—Warranty.*

3. In an action to recover the price of a stallion sold under a warranty with a provision that the stallion should be returned if not according to the warranty, a failure to return the stallion is not a ground for a recovery by the plaintiff who had broken the warranty, where it appears that the plaintiff had notified the defendant that he had removed from the place designated in the contract, that he should not send the stallion there, but should write, when he would receive further instructions, and that defendant had written, but had received no answer.

Argued May 13, 1913. Appeal, No. 130, April T., 1913, by plaintiff, from judgment of C. P. Lawrence

Co., Sept. T., 1908, No. 49, on verdict for defendants in case of Lew W. Cochran v. Robert R. McGeorge and Alice M. McGeorge. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Assumpsit on promissory notes. Before PORTER, P. J. Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* were (4) rulings on evidence, quoted in the opinion of the Superior Court, and (9) refusal of binding instructions for plaintiff.

*Wylie McCaslin,* for appellant.—Where personal property is sold upon a written guarantee that they will prove satisfactory under a test, it is implied that an adequate test shall be made in good faith under suitable conditions to determine whether such a result will be obtained: Delahunty Dyeing Machine Co. v. Pennsylvania Knitting Mills, 27 Pa. Superior Ct. 433.

The contract of warranty may provide that if the article fails to fulfill the warranty it shall be returned to the seller and in such case the condition is part of the warranty and must be complied with: Nutting v. Watson, 84 Neb. 464, 25 L. R. A. (N. S.) 823; Dunham v. Salmon, 130 Wis. 164 (109 N. W. Repr. 959); Beckett v. Gridley, 67 Minn. 37 (69 N. W. Repr. 622); Larson v. Threshing Machine Co., 92 Minn. 62 (99 N. W. Repr. 623).

The defendant could not prove his damage under the pleadings: Hartman v. Ins. Co., 21 Pa. 466; Ogden v. Beatty, 137 Pa. 197; Weed v. Weinberger, 12 Pa. Superior Ct. 12; Fuhrman v. Stackman, 28 Pa. Superior Ct. 154; Sprissler v. McFetridge, 37 Pa. Superior Ct. 607.

*Robert L. Wallace,* with him *C. H. Akens,* of *Akens, Wilkinson, Lockhart & Chambers,* for appellee.

OPINION BY MORRISON, J., July 16, 1913:

This is an action of assumpsit brought to recover the amount of two promissory notes, dated August 16, 1904, each for $300, one due November 1, 1906, and the other November 1, 1907, interest on both notes from date. The trial resulted in a verdict and judgment thereon in favor of the defendants and the plaintiff appealed.

On August 16, 1904, the plaintiff, Lew W. Cochran, and one A. W. Green, sold and delivered to the defendant, Robert R. McGeorge, a stallion represented to be the Hackney Stallion, Louis Bischof 106, for the price of $1,000. The sum of $400 was paid at the date of the sale and the remaining $600 was secured by the two promissory notes above referred to. Before the suit was brought the interest of A. W. Green in the notes was sold and transferred to Lew W. Cochran, and, therefore, he sued in his own name and there is no question raised as to his right to maintain the suit. The case was put at issue in the usual manner in an action of assumpsit.

As a part of the transaction of the sale and delivery of the horse, the following quoted guaranty was delivered to the defendant, Robert R. McGeorge, and the serious controversy in the case arises under said guaranty.

"This certifies that we L. W. Cochran & A. W. Green, of Middlefield, Ohio, have sold the Hackney Stallion, Louis Bischof 106 to Robert R. McGeorge of New Galilee, Pa., on August 16, 1904 for One Thousand Dollars.

"And we also guarantee the above named Stallion to get 60% of all breeding Mares in foal, provided said Stallion is properly cared for and exercised and in a healthy condition and said Mares are returned regularly to be tried and bred; provided, that if said Stallion does not fill the above guarantee after a fair trial, said Cochran & Green agree to furnish said purchaser another Stallion of equal value, and said purchaser agrees to accept said Stallion in satisfaction of this contract. Provided, however, that the Stallion returned has been well cared for,

has not been sold and is returned to said Cochran & Green
at Middlefield, Ohio, by April 1, 1906 sound and in as good
condition as when sold.

"It is further agreed that no representations, guarantees
or contracts shall in any way be binding upon said Cochran
& Green, except as set forth in this instrument of writing
and signed by said Cochran & Green.

"It is further agreed that in case of death from any cause
save neglect of purchaser said Cochran & Green agree to
furnish said R. R. McGeorge another horse of any other
or same breed on either farm and the value of same to be
Fifteen Hundred Dollars.   The same guarantee to follow
any horse chosen, to fill this guarantee.

" Cochran & Green<br>
Robert R. McGeorge"

We have examined the testimony, the rulings and
charge of the court and the arguments of the learned
counsel and our conclusion is that the case was properly
tried and carefully submitted to the jury and that the
record does not disclose reversible error.

The first, second, third and fifth assignments raise the
important question as to what is meant in the guaranty
by the words "Breeding Mares."   The contention of
appellant's counsel is that there was no evidence that the
mares bred to this stallion were breeding mares, that is,
mares which had been known to produce foals; that this
raised a legal question which the court was bound to de-
cide in favor of the plaintiff because the defendant failed
to prove that the mares bred to said stallion were known to
have produced foals.   The learned court below took, we
think, the proper view of this question and submitted to
the jury to say whether or not the mares bred to said
stallion, during the two seasons which McGeorge kept
the horse as a breeder, were, within the meaning of the
guaranty, breeding mares.   We cannot see that this was
a legal question to be determined by the court.   A common
expression among horsemen is that a mare has been bred

to a stallion, meaning that she was served by that stallion
for the purpose of getting her with foal. Suppose a man
raises a herd of young mares with the expectation of
raising colts, and when they reach the proper age has them
served by a stallion and although not one of them has
yet produced a colt, it is highly probable that horsemen
would speak of them as breeding mares. The meaning of
these words may vary in accordance with the connection
in which they are used and therefore the court could not
legally decide the question. The guaranty in that respect
reads: "And we also guarantee the above named stallion
to get 60% of all breeding mares in foal, provided said
stallion is properly cared for and exercised and in a healthy
condition, and said mares are returned regularly to be
tried and bred." As to the care of the horse and returning
the mares to be tried and bred there was ample testimony.

In this connection, in the guaranty, the word "bred" is
used with the meaning that the mares are to be tried and
served. We think there is sufficient evidence in the case
to warrant the court in referring to the jury what was
meant by the words "breeding mares," and it is evident
that the jury took the view that the meaning was mares
served by said stallion for the purpose of getting them in
foal. That a man would pay $1,000 for a stallion, for
breeding purposes, and keep, exercise, advertise and care
for the horse and be bound not to breed any mares to him
except such as had already produced colts seems to us, as
it probably did to the jury, an absurd construction of the
written guaranty. In this connection there is positive
evidence that this stallion failed to get sixty per cent of
the mares bred to him in foal and in fact only got about
twenty-four per cent of the mares served by him, during
the two seasons, in foal. We do not think the question
we have been discussing was one for experts but that a
jury of the county was fully competent to determine that
question. Under all the evidence in the case it appears
quite evident that the jury found that the horse was not
what he was guaranteed to be and that the defendants

paid all that he was worth, to wit, $400, when they purchased him.

The fourth assignment of error arises as follows: "Q. State what the horse was worth to you at any time for the purpose for which he was sold to you, at any time between the time you bought him and April 1, 1906?" This was objected to for the reason that there is no proper averment in the affidavit of defense as to the market value of the horse contracted for and the market value of the horse purchased. The court permitted the witness to answer and sealed a bill for plaintiff. The answer was "he was worth $150." The action being in assumpsit and the pleas non assumpsit, set-off, coverture of Alice M. McGeorge at the time of contract and special matters set out in affidavit of defense, we do not think the court erred in allowing the question to be answered, notwithstanding the reasons stated in the objections. The defendants had paid $400 on the horse, and if because of his failure to fill the guaranty he was not worth more than that sum we think the defendant was entitled to prove that fact under the pleadings. The issue was made up under the Procedure Act of May 25, 1887, P. L. 271, and the affidavit of defense having fulfilled its office in preventing judgment by default, we cannot find from the record that the plaintiff tried the case under any rules of court which would prevent the offer of any competent testimony not referred to in the affidavit of defense. In Xander v. Com., 102 Pa. 434, the late Mr. Justice CLARK, speaking for the Supreme Court, said: "An affidavit of defense, unless otherwise provided by rule is only intended to prevent judgment by default; this done, the affidavit is functus officio, its purpose is single and specific, it is no part of, nor connected with, the pleadings, it does not discharge any office, save that only for which it was designed." Citing numerous cases. See also Taylor v. Beatty, 202 Pa. 120; Andrews v. Packing Co., 206 Pa. 370; Kittanning Borough v. Kittanning Consolidated Nat. Gas Co., 26 Pa. Superior Ct. 355. Although the plea gave notice of special matters

set out in the affidavit of defense we do not understand this to limit the defendant to such matters alone. We are not furnished with any rules of court which would lead to that result and therefore we conclude that the objection and reasons given by the plaintiff's counsel furnished no ground for rejecting the defendant's testimony as to the actual value of the horse.

The sixth assignment is to the effect that the defendant McGeorge failed to comply with the obligation resting on him under the guaranty to return the horse to the seller at Middlefield, Ohio, by April 1, 1906. This assignment does not raise reversible error because there is positive evidence that one of the parties who sold the horse to McGeorge told the latter that they had disposed of their farm and could not receive the horse at Middlefield, Ohio, and not to send him there but to write and he would be given further instructions. Defendant McGeorge testified that he did write and posted the letter properly directed and stamped and he produced a copy of the same but that he never received any reply to his letter. We think the learned court fairly submitted this question to the jury.

The seventh assignment is another attempt to convict the court of error in allowing testimony in regard to matters of defense not set out in the affidavit of defense. As we have already said the case was not tried under rules of court limiting the defense to matters set out in the affidavit and it is clear that the learned court below took this view.

The eighth assignment complains of the court for not giving a binding instruction in favor of the plaintiff. We think it is quite clear, under the testimony, that the case was for the jury. This view also disposes of the ninth assignment which complains of the refusal of plaintiff's motion for judgment non obstante veredicto. In our opinion the plaintiff's learned counsel failed to present a case which entitled him to a binding instruction or to a judgment in favor of the plaintiff non obstante veredicto.

The arguments and authorities submitted by appellant's learned counsel have received careful consideration and they are not convincing that the court committed reversible error.

The assignments of error are all dismissed and the judgment is affirmed.