Free Brothers Co. *v.* Baltimore & Ohio R. R. Co., Appellant.

Argued March 20, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

442

*Clark Miller,* with him *William H. Eckert* and *Smith, Buchanan, Scott & Gordon,* for appellant.—Where a railroad maintains a yard and facilities adequate to accommodate the ordinary and normal amount of business there offered to it but unexpectedly an unusual, extraordinary and unprecedented influx of business occurs, resulting in enforced delay in placing incoming cars in the yard for delivery, the owner of goods, who shipped them with knowledge of the congestion and of the fact that the goods must necessarily be delayed, cannot recover from the railroad for the damage resulting to said goods from said delay: Joynes v. R. R., 235 Pa. 232; Laughlin Bros. Co. v. Ry., 225 Pa. 540; R. R. v. Mfg. Co., 16 Wall. 318; Eastern Ry. v. Littlefield, 237 U. S. 140; Bussey v. R. R., 13 Fed. 330.

*Harvey A. Miller,* of *Miller & Nesbitt,* for appellee.— If a railroad company under a straight bill of lading, containing no reservation or exception, receives perishable produce for transportation, it is liable for damages for delay in placement or delivery to destination, when such delay is caused by a congestion in its delivery yard due solely and entirely to cars being held by it on demurrage charges: Joynes v. R. R., 235 Pa. 232; Catanzaro & Sons v. R. R., 90 Pa. Superior Ct. 578; R. R.

v. Produce Exchange, 240 U. S. 34; Eastern R. R. v. Littlefield, 237 U. S. 140; Phillips & Sons v. R. R., 243 N. Y. 650.

OPINION BY MR. JUSTICE SADLER, April 15, 1929:

An action of assumpsit was brought by plaintiff against the defendant railroad to recover damages caused by delay in delivery of 47 cars of produce shipped during 43 days from Marietta, Ohio, to the named place of consignment in the City of Pittsburgh. It appeared that during the summer season, from June to September, a special train was run between these points to carry perishable products for plaintiff, and many other consignors, so that the same might arrive in the early morning of each day and be placed on sale at the 22d Street Yard. The cars first arrived at the 36th Street Terminal, and were promptly moved forward to the point of ultimate destination, and the contents then sold therefrom to dealers or retailers who desired to purchase. From July 28, 1925, to August 14th or 15th, the shipments in question were made by the plaintiff. Due to congestion at the place fixed for sale, actual delivery was not made beyond 36th Street, during the period referred to, for from 24 to 48 hours, though in the ordinary course the so-called "pickle train" should have reached 22d Street in 12 hours, and an opportunity thus given to take advantage of the morning trade. The statement claimed damages for the losses sustained by reason of the deterioration of the vegetables in transit, and plaintiff recovered a verdict. A new trial was refused as requested by defendant, and judgment entered, from which this appeal was taken.

Admittedly goods shipped from Marietta, under the ordinary bill of lading, during the greater part of the year, would not have reached Pittsburgh until 24 hours or more had elapsed. The defendant company did, however, hold itself out as willing to accept, in the short season now in question, food products which required

prompt marketing, and of this offer plaintiff took advantage. When the goods were thus accepted it was the duty of the railroad to carry them as it held out to do, and if it is to be excused, when a loss occurred from failure to comply with its implied contract, the burden is upon it to show a proper and legal excuse.

The affidavit of defense relied, in part, on the fact that the goods were shipped under an ordinary bill of lading not providing for movement by special fast service, such as furnished by the "pickle train," which defense we deem without merit under the circumstances appearing. It also rested on the allegation that the delay in the removal of the cars from the 36th to the 22d Street tracks in Pittsburgh was caused by unusual and unprecedented congestion existing in the produce yards on the days on which the cars arrived. As said in N. Y. & P. R. R. Co. v. Peninsula Produce Exchange, 240 U. S. 34, the railroad was bound only "to use reasonable care, diligence and exertion in forwarding and transporting and delivering." It averred that by reason of the overcrowded condition the cars could not be moved in the usual limited time farther than 36th Street, caused, in part, by a congestion due to the holding there of cars, three belonging to plaintiff, on demurrage, making it impossible to furnish for the moment additional trackage room. If the condition complained of was due solely to the fact that empty cars were detained for charges accruing because of failure to unload promptly, no legal excuse would appear, as we will later note, but the affidavit goes much further in stating that plaintiff, with full knowledge of the actual situation, *"persisted"* in forwarding cars of produce, knowing delay would necessarily follow, and that the cars were not held alone because of demurrage, but by reason of the fact that the claimant and other consignees were unable to dispose of their products and make possible shifting of the cars in place, as a result of depressed market conditions, and

that this was the reason for the congestion and inability to change the location of those already in position.

In paragraph 5, it was distinctly alleged that the inability to move the cars from 36th to 22d Street was due "to the failure and neglect of the plaintiff and other consignees in the Pittsburgh district to unload cars already placed in the Produce Yards." The delays complained of extended from July 29th to August 14th, and so serious had the condition at the yard become that, according to the affidavit of defense, an embargo on all further shipments was placed on August 6th from the districts here involved, and was only lifted because of the insistence of plaintiff and other consignees who were fully aware of the situation. Their agents prior thereto also knew of the likelihood of delay, but demanded that their goods be received for transportation.

Plaintiff, in his replication, denies such information as set forth, but the question before us is whether defendant had the right to prove the facts as proposed, which the trial judge refused to permit. Joynes v. P. R. R. Co., 235 Pa. 232, is the leading authority in Pennsylvania dealing with facts such as here presented. In that case there was also a delay in removing the produce from the main freight yard to the track where the cars were opened and contents sold. Instead of the six hours usually required for this purpose the forward movement was not made for two days and loss occurred. Justice STEWART, in expressing the views of the court, then said the burden was on the railroad to excuse itself for failure to deliver on schedule, and no proper attempt to do so was made. It was there stated that the holding of cars for demurrage would not in itself furnish a defense, or legally justify the congestion which occurred, and the same can be said in the instant case.

The company must show a furnishing of adequate facilities for "ordinary conditions," and that was a fact for the jury. It was not bound to provide in advance for an unusual influx of business. The original state-

ment filed rested the right to recover on delay in transportation, and made no claim that the storage capacity provided for 65 cars each day at the 22d Street Yard was not sufficient for all consignees making use of it, though the court in its charge intimates the facilities may not have been ample, and such fact had been suggested in the replication filed. For the period now in question, from July 29th to August 12, 1925, this would require placing space, including Sundays, for 2,795 cars. As appears from the exhibits in evidence, 2,778 were actually put on the tracks for consignees during that time. On four days there were three less than the maximum capacity, and on eleven one less, while on five occasions more than 65 were taken care of. During the entire period the plaintiff did have on the tracks each day from 6 to 15 cars, a total of 483, though it was but one of the consignees having the right to use the yard. It is clear that a large portion of the produce of the claimant was taken care of, though it was but one of the shippers entitled to like service, and, when it offered perishable freight for transportation, knew, on each occasion, that the 22d Street Yards were filled to capacity with cars awaiting sale of their contents.

"When an emergency arises and more business is suddenly and unexpectedly cast upon a carrier than he is able to accommodate, unless the carrier declines to receive the excess offered, some shippers must necessarily be delayed; yet if the carrier do receive the goods *without notice to the shippers* of the circumstances likely to occasion delay, or fail to obtain his assent, *express or implied,* to the delay, he will be bound to transport the goods within a reasonable time, notwithstanding such emergency...... It may be that circumstances here relieved defendant of the duty of notifying shippers, or this particular shipper, of the congestion at the produce yard. But here again, such circumstances were not to be presumed but shown, and if a question of fact arose in connection therewith, a reference to the jury would

have been unavoidable": Joynes v. P. R. R. Co., supra, page 237. Laughlin Bros. Co. v. Ry., 225 Pa. 540, is distinguished in the Joynes Case on the ground that custom permitted the consignee to have in place but three cars at one time, and the railroad was excused from receiving a greater number. In the third Pennsylvania authority cited, where the facts are somewhat similar, the decision turned on whether there had been any unreasonable delay: Catanzaro & Sons v. Southern Pacific Co., 90 Pa. Superior Ct. 578.

It is true that if unusual conditions make delay likely, notice must be given to the shipper of the existing condition or circumstances proven from which it is necessarily imputed, if the carrier is to be excused: Eastern R. R. Co. v. Littlefield, 237 U. S. 140. The controlling rule is correctly stated in 10 C. J. 291, as follows: "When the carrier has complied with its duty in respect of giving notice, it should not be held responsible for a delay which it cannot prevent if the shipper still insists on delivering his property for shipment, and an express agreement between the carrier and the shipper is not necessary to exempt the carrier from liability for delay in delivery due to such conditions." The defendant had the right in the instant case to contradict Free, the plaintiff, and show his actual knowledge of the existing congestion, and that he nevertheless took voluntarily upon himself, with full notice, the apparent risk of loss from possible delay in delivery. He had testified in chief to the contrary.

The error now requiring consideration is that found in the first assignment. It may preliminarily be noted that appellee strenuously insists that the sole excuse for the congestion set forth in the affidavit of defense was that the tracks were filled with cars held for demurrage charges. If that were all, we would say, as before observed, no legal excuse had been set up, as ruled in Joynes v. P. R. R. Co., supra. But there was an additional reason, entirely independent, in the averment

that the car tracks were filled with cars awaiting sales, and that plaintiff was aware of the condition when he demanded that nevertheless his goods be taken for transportation. That he did know this is apparent from the record, when Austin was asked: "Q. From your conversation with Mr. Free did he, or not, know of the existence of the congestion in the yards?" And the court said, when an objection was made: "He knew it, he says he did."

In contradiction, and as tending to establish facts from which a verdict for defendant might be justified, counsel for the railroad proposed "to prove that there existed at the 22d Street Produce Yards an extraordinary and unprecedented congestion which prevented the placing of cars on tracks in the produce yards, *regardless of the cause of that congestion* (not limiting it to the cars held on demurrage), that the plaintiff, through his agent, had knowledge of the said unprecedented and extraordinary congestion, and *persisted in shipping* to the Pittsburgh Produce Yards in spite thereof." This testimony was rejected, not on the theory now suggested by appellee that the affidavit of defense was not sufficiently broad to permit proof of such excuse, but solely because, as stated by the court below in making its ruling on the offer, "Under the authority of Joynes, for use, v. The P. R. R. Co., reported at 235 Pa. State Reports, page 232, the objection is sustained"; which can only be taken to mean that the trial court thought the Joynes Case ruled the present one; an erroneous conclusion. In short, the court, as appears in its charge, was apparently of opinion that the defense suggested by the offer was unavailable unless endorsed on the bill of lading; for this reason, we feel that the ends of justice and proper administration of the law call for a new trial.

It is fair to assume that at another trial defendant will present the evidence which he desired to put in at the last trial (Gandy v. Weckerly, 220 Pa. 285, 293), namely, to show that notice of the possible delay was

given at the time of the first shipment, and the goods were received only because plaintiff demanded it be done, knowing the possibility of resulting damage; further, that an embargo was actually put in force on August 6th, and only removed because of the insistence of plaintiff and other shippers, who forwarded their goods with the attendant risks. If the railroad could establish these facts, they would be for the consideration of the jury, and it would be for it to say whether there was any unreasonable delay, and, if so, the extent to which plaintiff was affected in each particular shipment, basing the damages, if any, on the facts proven. The offer should have been admitted, and the first assignment of error is sustained.

What was said by Justice STEWART in Joynes v. P. R. R. Co., supra (page 240), is applicable here: "Since, however, the case was not tried on the issues which were properly involved, we shall enter such judgment as will afford the parties another opportunity to have the case tried according to the law and evidence."

The judgment is reversed and a venire facias de novo awarded.