Commonwealth, to use, *v.* Gudaitis (et al., Appellant).

Argued April 13, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*John W. Murphy,* of *Gunster, Mackie & Murphy,* for appellant.

*Sydelle B. Hyman,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, June 26, 1936:

It is somewhat difficult to see on the application of what legal principle appellant Moskurak can hope to escape liability on the bond which he admits he signed as surety for Gudaitis, administrator of the Estate of Anna Shookster. Gudaitis has failed to pay over some of the money he received. The bond was given to the Commonwealth in the form prescribed. Its execution is admitted. All that is set up in appellant's behalf, and that in a very indefinite way, is that he thought he was signing a paper relating to some stock he was purchasing from Gudaitis. As was observed by the court below, "It [the evidence] indicated a total absence of misrepresentation. Concededly Gudaitis made no statement as to the character of the document." Appellant did not read the bond. In answer to the question whether he could read or write, he testified that he could not read, but could sign his name. He admits that he did not ask that the bond be read to him. As long ago as when Sheppard's Touchstone was written (1648), the law was as follows (page 56): "If a party that is to seal the deed can read himself and doth not, or being illiterate or blind, doth not require to hear the deed read or the contents thereof declared, in these cases albeit the deed is contrary to his mind, yet it is good and unavoidable." In language not quite so quaint, we repeated this principle in *Greenfield's Est.*, 14 Pa. 489, 496, adding that one who so signs a document "is guilty of supine negligence which . . . is not the subject of protection, either in equity or at law." We have never deviated from this ruling, one of our latest cases being *O'Reilly v. Reading Trust Co.*, 262 Pa. 337, 343.

If by his argument appellant intends to urge that the court admitted the bond without common law proof of its execution, it is sufficient to answer that appellant admits that he signed it. But being an official bond given to the Commonwealth, taken by the register of wills under the Fiduciaries Act of June 7, 1917, P. L. 447, 20

P. S., section 321, approved by the register and on file in his office, and recorded under the requirements of the Act of April 13, 1868, P. L. 882, special to Luzerne County, it required no proof of execution. "The official bond of a guardian is made, executed and delivered in the orphans' court, and its approval by the judges is an adjudication upon it. It is not executed in the presence of, nor delivered to, the parties interested. The court is the instrument of the law to require, receive, approve and take charge of the bond, in trust for the parties in interest who are non sui juris, and it must be presumed, in the first instance, that the court fully performed the duty imposed by law, in the examination of the essential features of the bond. The genuineness of the signatures, the sufficiency of the sureties, the erasures and interlineations, with other matters material to its validity, were proper for the judgment of the court, and are presumed to have been satisfactorily established and explained": *Xander v. Com.,* 102 Pa. 434, 438. See also *Boyd v. Com.,* 36 Pa. 355; *Burns v. Lyon,* 4 Watts 363.

It is also contended that the signatures of the subscribing witnesses to the bond were added after it was signed by appellant and without his knowledge, and that this was a material alteration of the instrument. That the signatures were so signed is far from clear, but even if they were, this did not affect the validity of the document. "Subscribing witnesses to a deed, however, are not necessary, and if delivery is made and proved, the instrument is valid, it matters not when they signed": *Barnard v. Kell,* 271 Pa. 80, 87; *Loftus v. Miners Nat. Bank,* 308 Pa. 362.

We find no merit in this appeal.

The judgment is affirmed.