Doneyho, Appellant, *v.* Scottdale Connecting Railroad Company.

Argued March 29, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*J. Thomas Hoffman,* for appellant.

*Harold E. McCamey,* of *Dickie, Robinson & McCamey,* with him *Charles A. Woods, Jr.,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, May 9, 1938:

Plaintiff was employed by the McKinney Steel Company as the operator of a locomotive crane. The steel company and defendant, Scottdale Connecting Railroad

Company, used a railroad siding in common. Plaintiff was directed by his employer to load sand on the siding and the crane was put in position by a locomotive belonging to the steel company. When plaintiff had completed loading the sand, the crane could not at once be moved from the siding owing to the presence of cars thereon. Plaintiff, upon learning this, decided to do some work on the brake under the flat car on which the crane operated. He and his helper got underneath the car. They placed no signal or warning device indicating their presence beneath the car and informed no one that they were there. An engine of defendant backed some cars into the siding, they bumped into other cars standing upon it, which in turn ran down a slight grade in the track and bumped into the crane car, injuring plaintiff, who was still underneath it. It was not shown that the engineer of the locomotive or the fireman knew of the presence of plaintiff beneath the crane car.

The trial court held plaintiff guilty of contributory negligence under the authority of *Cypher v. Huntingdon & Broad Top Mountain R. R. & Coal Co.*, 149 Pa. 359, 24 A. 225, and *Barrage v. Phila. & Reading Ry. Co.*, 60 Pa. Superior Ct. 66 (KEPHART, J.). To which may be added, as denying the right of recovery: *Peterson v. Penna. R. R. Co.*, 195 Pa. 494, 46 A. 112; *Bardis v. Phila. & Reading Ry. Co.*, 267 Pa. 352, 109 A. 621; *Neal v. Buffalo, Rochester & Pittsburgh Ry. Co.*, 289 Pa. 313, 137 A. 453.

But, beyond anything else, a release executed by plaintiff bars recovery. It was signed, about a month after he was injured, in triplicate. The consideration named in it, $150, was paid by check, which contained a printed release on its face. The check was left with plaintiff by the man who made the settlement. It was endorsed by plaintiff and his wife. She took it to a bank and received the money it called for, which was spent. No repudiation was made of the settlement, or of the release, until this suit was brought some two years later.

The money was not returned; plaintiff testified his attorney offered to return it. His endeavor to nullify the release is largely based upon the statement that he did not read or understand the import of the papers he admittedly signed, that he was upset nervously at the time and suffering pain because of his injuries, and could not read owing to the condition of his eyes, and by reason of the further fact that the man who made the settlement told him the money was donated by his fellow workmen, an account which is at least somewhat countered by the circumstances that the check was drawn on a Philadelphia bank, that he had received a donation two weeks before of $14 or $16, and that when plaintiff returned to work he did not thank any of the men who might have contributed the money represented by the check. The attending physician, subpœnaed by plaintiff but not called by him, and called by defendant, testified that plaintiff at the time he signed the release had no nervous condition, nor was his mental capacity in any way impaired so as to affect his understanding of the terms of settlement or of appreciating what he signed. No testimony was offered in plaintiff's behalf that his mental capacity was in any way impaired.

In the recent case of *Vogel v. Taub*, 316 Pa. 41, 173 A. 270, we reaffirmed the rule announced in many of our cases in this language (p. 43) : "The settled rule is that to set aside such a release on the ground that it was obtained by fraud, the evidence must be, as was said in *Ralston v. P. R. T. Co.*, 267 Pa. 257, 265, 268, 275, 110 A. 329, 'clear, precise and indubitable.' . . . 'indubitable proof' is defined as 'evidence that is not only found to be credible, but of such weight and directness as to make out the facts alleged beyond a reasonable doubt.' " Measured by the standard thus established the testimony fell far short of that required to wipe out the release.

Judgment affirmed.