Peoples-Pittsburgh Trust Company, Appellant, *v.*
McCaffrey et ux.

Argued October 2, 1939; reargued December 8, 1939.
Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN,
STERN and BARNES, JJ.

*James M. Graham,* with him *Patterson, Crawford, Arensberg & Dunn,* for appellant.

*Edward J. I. Gannon,* of *Hazlett, Gannon & Walter,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, December 11, 1939:

The issue in this case is whether a married woman is liable on the bond she executed, which accompanied a mortgage covering a property owned by her and her husband as tenants by the entireties. Judgment was entered upon the bond. The judgment was opened to permit the wife to make defense, and the trial, on the question of her liability, resulted in a finding in her favor. The case comes to us on plaintiff's appeal.

John McCaffrey and Mary McCaffrey were husband and wife. Thomas McCaffrey, brother of John, was in the real estate business. Thomas introduced John to the assistant manager of the mortgage department of Peoples Savings and Trust Company, now Peoples-Pittsburgh Trust Company, the appellant. John told the assistant manager that he desired to apply for a mortgage loan. The assistant manager at his request filled out a printed form of application for the loan. John stated that he owned the property and that the mortgage was to be his. He signed the application and the address of Thomas's real estate office was noted thereon. The loan was approved by the expectant lender. A letter was written to Thomas apprizing him of the fact. At this time it was not known that the property

to be mortgaged was owned by John and his wife by entireties. This was discovered when the title was examined at the instance of the attorney for the trust company. He prepared a bond and mortgage to be signed by both husband and wife and sent them to Thomas McCaffrey for execution. They were signed by husband and wife and returned to the attorney, who had the mortgage recorded. The papers are dated April 12, 1920. April 16, 1920, the attorney drew his firm's check to the order of husband and wife for the amount of the loan and mailed it to them. The check was returned with their endorsements.

The wife testified that she had nothing to do with the application for the loan, that her husband said he wanted her to sign "this," that she signed, not knowing it was for money borrowed; that she did not know what she was signing and got none of the proceeds of the loan. In effect she said she did not read the bond and mortgage. Whether she read them or not she was just as much bound by them as though she had: *Com., to use, v. Gudaitis,* 323 Pa. 110, 186 A. 82; *Berardini v. Kay,* 326 Pa. 481, 192 A. 882; *Doneyho v. Scottdale Conn. R. R. Co.,* 330 Pa. 207, 199 A. 162.

We have, therefore, a situation where a married woman, joint owner of a property, executes a bond and mortgage securing a loan, endorses a check drawn to her and her husband's order for the proceeds and years afterwards repudiates the transaction and denies liability on the bond on the ground that she was a surety or accommodation maker. May she repudiate her obligation? We are of opinion on the facts as shown she may not. This is not a case where there was "window dressing" to give color to a wife's liability, such as *Sears v. Birbeck,* 321 Pa. 375, 184 A. 6; *Western National Bank of York v. Levin,* 331 Pa. 113, 200 A. 71; *Martz v. McKinley,* 96 Pa. Superior Ct. 213. Here, she was a joint owner of the property primarily to secure the loan. The transaction was an ordinary business one

such as is taking place daily. There was no bad faith or subterfuge on the lender's part. She was in no way deceived by its officers. When she endorsed the check they could rely upon her signature as showing that she received the money and that the loan was to her as well as to her husband. If she had been a tenant in common and her co-owner or owners had been other than her husband and a loan had been made and papers signed as here, she certainly would not be heard to repudiate it. The fact that her co-owner is her husband can make no difference.

There was no obligation on the trust company to see that she used the proceeds of the loan for her individual purposes. One who lends money directly to a married woman is not required to see that it was borrowed for or applied to a purpose recognized in the act giving her contractual capacity: *Scranton Lackawanna Trust Co. v. Birdeck,* 333 Pa. 502, 5 A. (2) 196. Having joined in the obligation and received the proceeds of the loan, she is liable and it is immaterial what she did with the money after receiving it: *Newtown T. & T. Co. v. Underwood,* 317 Pa. 212, 177 A. 27; *Frankford Trust Co. v. Wszolek,* 320 Pa. 437, 183 A. 52; *York Trust Co. v. Vandersloot,* 334 Pa. 591, 6 A. (2) 498. It is unimportant that the original application and negotiations for the loan were conducted by the husband and that the wife took no part therein: *York Trust Co. v. Vandersloot,* supra.

The judgment in favor of the defendant is reversed and the court below is directed to reinstate the judgment in plaintiff's favor.

DISSENTING OPINION BY MR. JUSTICE MAXEY:

To reverse the judgment of the court below requires a reversal of a *finding of fact by a jury,* which finding was based upon competent evidence, and *that* is something which this court has uniformly declared, throughout its entire history, *cannot be done.* In *Sidwell v.*

*Evans,* 1 P. & W. 383, 386, Chief Justice GIBSON, speaking for this court, said: "No lawyer ever doubted that a binding direction on a question of fact" was "error." The decision of the majority of the court in the instant case is equivalent to a holding that the court below should have given binding instructions for the plaintiff (i. e., the appellant here). The reversal of the judgment of the court below results in a judgment in plaintiff's favor though the sole issue in this case turns on a question of fact. No principle has been more frequently reiterated by this court than that questions of fact are "solely for the jury," as the present Chief Justice said in *Keystone Paper Mills Co. v. Pa. Fire Ins. Co.,* 291 Pa. 119, 139 A. 627. In *Nanty-Glo Boro. v. American Surety Co.,* 309 Pa. 236, 163 A. 523, Mr. Justice DREW, speaking for this court, said that the "rule is firmly established" that when proof "depends on oral testimony it is the province of the jury to decide . . . subject to the salutary power of the court to award a new trial if they should deem the verdict contrary to the weight of the evidence" (quoting from *Reel v. Elder,* 62 Pa. 308). See also *2nd Nat. Bank v. Hoffman,* 229 Pa. 429, 433, 78 A. 1002, and *Fuller v. Stewart Coal Co.,* 268 Pa. 328, 112 A. 65.

The sole issue in this case was, as Judge MARSHALL declared in his charge to the jury: "Three judges sitting in banc said it was a question of fact in dispute." The question of fact was clearly and properly defined by the court below, that question being whether Mrs. McCaffrey received the proceeds or any part of the proceeds of this loan, i. e., whether she derived such benefit from it as to make her liable for its payment or whether in signing the bond she acted as guarantor or surety for another—a status which the Act of June 8, 1893, P. L. 344 (sec. 2) prohibits her from assuming. The jury found on competent testimony that Mrs. McCaffrey had nothing to do with this loan except to sign the bond and mortgage when her husband requested

her to do so. It is undisputed that it was John McCaffrey (Mary's husband) who applied orally for the loan and who signed the application for it. William Maisch, assistant manager of the mortgage department of the appellant company so testified. The majority opinion correctly states: "John told the assistant manager that he desired to apply for a mortgage loan. . . . The loan was approved." Maisch also testified that the three applications for extensions of this loan were made by John McCaffrey, the husband. The circumstances attending Mrs. McCaffrey's signing of the bond and mortgage were related by her under oath as follows: "I came out of the laundry with a basket full of clothes one afternoon about four o'clock and he said, 'Mary, come here I want you to sign this.'" She was then asked these questions and made these answers: "Q. Who said that? A. My Mister, John McCaffrey. He said, 'Mary, come here I want you to sign this,' and I had my sleeves rolled up and I went and signed it and I took my basket of clothes and went out and hung up the clothes. . . . Q. Did you get any of the proceeds of this loan? A. No, sir, not a cent."

In *Sears v. Birbeck,* 321 Pa. 375, 184 A. 6, where a married woman and her husband signed a judgment note and a check for $5,000 was made out to her and she indorsed the check but claimed that she received none of the proceeds of it and that she signed the judgment note merely as an accommodation for another, we held that "the case was for the jury" (citing *Duane v. Miercken,* 4 Yeates 437, 440, and *McGlinn Distilling Co. v. Dervin,* 260 Pa. 414, 103 A. 872). We also said in the same case that "the disability which the law casts upon a married woman in making a note [or other legal promise] as security for another is an *absolute* disability. Nothing that she can say or do can remove it." This being the law, it follows that the *good faith* of the lender of money on a married woman's promise to pay money which in fact it loaned to another, has no bear-

ing whatever on the question of her liability to discharge
the promise. A married woman can no more be held
to such a promise than can an infant. It is declared
in 10 R. C. L. p. 738, sec. 55, that "if the contract [of
a married woman] relates to a matter concerning which
the common law disabilities continue, so that the con-
tract is void for want of capacity or power to make it,
the doctrine of estoppel cannot be invoked." In *Pine
Brook Bank v. Kearney*, 303 Pa. 223, 154 A. 365, this
court decided a case of a married woman's suretyship
where the married woman filed with the lending bank
a *certificate* that the note was given for her own per-
sonal benefit and for the improvement of her separate
estate. Since this certificate was contrary to *the facts*,
we held that a married woman could not remove her
statutory disability to contract by lying about it and
that in an action to collect the judgment note the mar-
ried woman could defend on the ground that she had
*in fact* signed the note as surety for another. In *Murray
v. McDonald*, 236 Pa. 26, 84 A. 579, this court held
(quoting from the syllabus): "A judgment entered
against a married woman on a judgment note which
she signed as surety for her husband, will be opened
because the signing of such a note by a wife, not only
contravenes public policy but also offends against a
positive statute. The wife is not estopped from assert-
ing her right to have the judgment opened because she
falsely certified on the face of the note that it was given
for her own personal use and not as a guaranty or
surety for any other person; nor is she estopped by
the fact that she took no steps to have the judgment
opened until four years after its entry."

The fact that Mrs. McCaffrey signed the bond in ques-
tion with her husband and endorsed the check simply
cast upon her the burden of proving that in signing
the bond she was acting merely as guarantor or surety
for her husband: *Sears v. Birbeck*, supra. That she
met this burden to the satisfaction of the jury is estab-

lished by the jury's verdict in her favor. It has been definitely ruled by this court not only in the Birbeck Case, supra, but also in *Western Nat. Bk. of York v. Levin,* 331 Pa. 113, 115, 116, that the mere indorsement of the check does not impose liability if in fact it is not intended thereby that the wife shall have control and dominion over the money; were it otherwise the law could be readily evaded in practically every instance by resort to the formality of an indorsement. In the Levin Case the bank actually credited the wife's account with the loan and she then signed a check for the money to her husband, but this was held, under the facts, to be immaterial and to be only *the form* which the transaction took. A long line of opinions of this court on this subject are *diametrically opposed* to the proposition that if a lender of money acts in good faith and in no way "deceives" a married woman and puts her name on the check as one of the payees, she can by merely endorsing that check become accommodation endorser, maker, guarantor or surety for another, the Act of June 8, 1893, to the contrary notwithstanding.

When Mrs. McCaffrey signed the mortgage as security for the loan to her husband she did what the law gave her the power to do; when she went further and signed the bond to secure the loan to her husband, should the mortgage prove to be insufficient, she did something which the Act of 1893 (supra) declared she had *no* power to do. The *mortgage* was a valid, enforceable instrument, since there is no limitation on the power of a married woman to mortgage her real estate (with her husband's joinder) for any purpose she may see fit (*Hanover Trust Co. v. Keagy,* 335 Pa. 356, 358), but the present action is an attempt to enter a personal judgment against the wife on the *bond,* and, presumably, to collect the deficiency out of her separate estate. She was not in any way benefited by the loan; she was not, as in *Archbald v. Hood,* 322 Pa. 434, 186

A. 791, and *Hanover Trust Co. v. Keagy,* supra, seeking to relieve a lien on any real estate in which she had an interest. Nor was the trust company under any misapprehension that the wife was a real party in the transaction or was actually receiving any of the money, since it had itself brought her into the transaction merely to make the mortgage a valid pledge of the real estate the husband tendered when he sought the loan.

*Under the facts found by the jury,* Mrs. McCaffrey's signature on the bond imposed *no obligation whatsoever upon her,* because the Act of 1893 *prohibited* her from assuming an obligation as guarantor or surety for another. In *Johnson County v. Rugg,* 18 Iowa 137, it was held that "plaintiff's remedy [against the wife] extended only to the mortgaged property," and that the court could *not* direct a "general execution to issue against her, if the mortgaged property failed to pay the debt," for though she had given a note at the time she signed the mortgage she did not receive any part of the borrowed money. The majority opinion in the instant case virtually nullifies the last six lines of section 2 of the Act of 1893, for it makes it possible to impose on a married woman liability for the debt of another by having her and that other person pledge with the lender some real or personal property which they jointly own and *then execute a bond or note to take care of a deficiency.* Suppose John McCaffrey had said to the bank: "I want to borrow $1,000. As security, my wife and I will place in your possession a car we jointly own and we will also both sign a note for $1,000." Would the wife be bound by such a note? The Act of 1893 answers "No." I cannot comprehend how the wife's joining in the execution of the mortgage here (as she had the legal power to do) makes her liable on a *wholly distinct contract,* to wit, the bond, which the law *denies* her the power to execute *as surety for another.*

The majority opinion cites *York Trust Co. v. Vandersloot,* 334 Pa. 591. It is easily distinguishable from

the instant case, for in *that* case there was no proof whatever that the transaction in question was one of accommodation. The wife had applied for the loan *individually*.

The majority opinion. says: "There was no bad faith or subterfuge on the lender's part. She was in no way deceived by its officers. When she endorsed the check they could rely upon her signature as showing that she received the money and that the loan was to her as well as to her husband." This carries the implication that if a married woman is not *deceived* by the lender, but fully understands what she is doing, she is liable on the note or bond which she signs. This would mean that if she actually *intends* to become an accommodation maker or surety she would be liable. Such a premise ignores the main purpose of the law, which is to protect her against herself. None of the adjudicated cases has ever limited relief to instances where deception was practiced on the wife.

The majority opinion also apparently intimates that the property which the wife owned with her husband as tenants by the entireties was in some way benefited by the placing of the mortgage upon it, and therefore she profited by the transaction. If this is meant to imply that the borrowed money was used for the purpose of improving this property or in any other manner from which the wife derived advantage *there is not an iota of testimony to support it.* Even if there was such testimony, the question would still be for the jury. Despite the jury's finding in Mrs. McCaffrey's favor, this court now sanctions the imposition of liability upon all of her individual assets in order to pay her husband's debt, though she never even met the agents of the lender of the money or made any representations of any kind to them.

The majority opinion also says: "If she [Mrs. McCaffrey] had been a tenant in common and her co-owner or owners had been other than her husband and a loan had been made and papers signed as here, she certainly

would not be heard to repudiate it. The fact that her co-owner is her husband can make no difference." I believe that no previous decision of this court holds that a married woman who is a co-owner or tenant in common of property can become surety or guarantor of a loan when "as here" the jury found that the loan was made to another than herself, whether that other be her husband or the co-owner or co-tenant or someone else. The majority opinion states that defendant "years afterwards repudiated the transaction and denied liability." I find no support for this statement. Mrs. McCaffrey had nothing to do with the loan; she did not even know that her husband was borrowing money. Her sole connection with it was in signing some papers at his request. No attempt was made to assert a claim against her, and no notice to her or demand for payment of principal or interest was made until the inception of the present case. The loan was extended several times on the application of the husband alone. When in 1934 judgment was entered on the bond, plaintiff stated of record in its petition that the judgment was desired so that it might "proceed with the sale of the property covered by the mortgage." Not until 1937 did plaintiff request an assignment to it of the rents from the other properties. It was not until April 29, 1937, that the plaintiff notified Mrs. McCaffrey that it would issue an execution against her property unless she executed this assignment. The petition to open judgment and restrain execution was filed May 11, 1937, i. e., twelve days after the first notice to her that the plaintiff intended to hold her individual property liable for her husband's debt. The majority opinion says: "Having joined in the obligation and received the proceeds of the loan, she [Mrs. McCaffrey] is liable and it is immaterial what she did with the money after receiving it." Whether or not Mrs. McCaffrey *received the proceeds of the loan* was the *very fact in issue* in this case. She testified that she received "not a cent" of that loan,

and there was absolutely no testimony *to the contrary*. The jury believed her and rendered a verdict in accordance with that finding of fact and that verdict *should*, under the practice immemorially established, be conclusive in this court. Under the jury's finding of fact the bond in question was as to her, void.*

I think that at least two cases of this court squarely rule the present case. In *Commercial Acceptance Corp. v. Ruppel et ux.*, 295 Pa. 88, 146 A. 98, we held that where a wife executes, with her husband, a mortgage on real estate owned by them as tenants by entireties, and at the same time executes a bond in the usual form

---

* Whether a married woman's note given for a purpose prohibited by the Act of 1893 be considered "void" or "voidable" is immaterial. Vol. 2 of the Restatement of Contracts, p. 906, sec. 475 b, says: "Confusion in the use of the words 'void' and 'voidable' is common, chiefly because it frequently makes no difference whether a contract is void or is voidable."

If a married woman undertakes to assume an obligation the Act of 1893 *prohibits* her from *assuming*, her undertaking is *void*. A note she signs as *evidence* of her obligation may be void or valid, according to circumstances. If the note is given for her own benefit, it is valid; if it is given as "accommodation endorser, maker, guarantor or surety for another" it is *invalid*. The validity of the note cannot be adjudged until the vital fact of its purpose is established. Therefore, it follows that as evidence of a legal obligation a married woman's note is *on its face* valid; if a married woman pleads that her note was given for a prohibited purpose she has the burden of proving it. The presumption is against her; "presumptions are guide-posts indicating whence proof must come": *Watkins v. Prudential Ins. Co.*, 315 Pa. 497, 504, 173 A. 644. Once a married woman establishes *as a fact* that her note was given for a prohibited purpose, it imposes no legal obligation upon her and is *void*. By way of analogy, a certified copy of the official record of the marriage of a person who has been bigamously married is not void *on its face*. It will be received as prima facie proof of legal marriage until it is proved that one or both of the contracting parties were in law *incapable* (because of that person's previous and undissolved lawful marriage) of entering into the marriage so evidenced. See section 6 of the Act of June 23, 1885, P. L. 146; *Kingston v. Lesley*, 10 S. & R. 383, 387. A bigamous marriage is void: *Heffner v. Heffner*, 23 Pa. 104.

accompanying a mortgage, a judgment entered on the bond against the wife will be opened if it appears that the wife in executing the bond was only a surety for her husband, and the bond was therefore void under the Act of June 8, 1893, P. L. 344. In the instant case it not only "appears" that the wife executing the bond was only a surety for her husband, but the verdict of the jury conclusively *established* that fact.

The other case "on all fours" (in its essential facts) with the instant case is *McKean v. Enburg et ux.*, 325 Pa. 456, 188 A. 835. There a wife joined her husband in the execution of two mortgages on property held by them as tenants by the entireties and in the execution of two bonds which the mortgages were given to secure. These bonds and mortgages were accepted as a full release of a claim against *the husband.* Judgment was entered on one of the bonds, by virtue of its warrant, against both husband *and wife.* The latter secured a rule to open the judgment and one to satisfy it. Both rules were discharged and an appeal to this court followed. We reversed the order of the court below, and, speaking through Mr. Justice DREW, said: "The only question here involved is whether appellant was a surety on the bond upon which judgment was entered. We think she was. The judgment ought to have been opened to let her into the defense accorded by the Married Women's Act of June 8, 1893, P. L. 344, section 2." He added: "Both husband and wife deposed that neither intended her undertaking to be that of a principal. There was no evidence to contradict them." He then distinguished the case of *Frankford Trust Co. v. Wszolek,* 320 Pa. 437, 183 A. 52, from the McKean Case, by saying: "There was ample evidence to sustain the jury's finding that she [Mrs. Wszolek] intended to assume a primary obligation on this note." The McKean Case should rule the instant case. Here, as there, the only question was whether the married woman was a surety on the bond; here, as there, she

deposed that she was *not* a principal and there was *no* evidence to contradict her. In any event, whether there was contradictory evidence or not, it became *a question for the jury.* The jury sustained Mrs. McCaffrey's contention and the finding was not only supported by "ample" evidence but any other finding would have been *contrary to* the evidence.

What Chief Justice WAITE, speaking for the Supreme Court of the United States, said in *Chicago & N. W. Ry. Co. v. Ohle,* 117 U. S. 123, 129, could appropriately be said in adjudicating the case now before us: "It is not for us to decide that the jury brought in a wrong verdict under a correct charge if the record shows, as it does, that there was some evidence to support the finding which was made." Here not only was there "some evidence" to support the finding, but the record is barren of evidence to support a contrary finding.

There was raised in this case a plain issue of fact. The jury under unchallenged instructions decided that *John McCaffrey* alone was the borrower and that Mrs. McCaffrey, his wife, signed the bond merely as an accommodation to him. Under the constitution and laws of this State, Mrs. McCaffrey is entitled to hold the judgment based upon the verdict she obtained in a fair trial. In *Com. v. Collins,* 268 Pa. 295, 110 A. 738, this court said: "The [constitutional] provision that trial by jury shall be as heretofore and the right thereof remain inviolate has been a fundamental principle in this State from the time of Penn's charter: I Col. Rec. 37. . . . Its meaning is that *a jury* shall continue to be the tribunal for the determination of all *questions of fact* in controversies between individuals and in actions and prosecutions brought by the Commonwealth." (Italics supplied.)

I think the appellee is entitled to an affirmation of the judgment she obtained in the court below.

Mr. Justice STERN and Mr. Justice BARNES concur in this dissenting opinion.