**REED et al. v. KELLERMAN.**

No. 396.

District Court, E. D. Pennsylvania.

July 30, 1941.

Thomas J. Minnick, Jr., of Philadelphia, Pa., for plaintiffs.

Wm. C. Schwebel, J. George Lipsius, and Charles Roisman, all of Philadelphia, Pa., for defendant.

KALODNER, District Judge.

The issues having been brought to trial before me on amended complaint and answer (amended at trial), and having heard the testimony of witnesses and argument of counsel, I make the following findings of fact:

1. That W. B. Ward was an officer of the United States of America, having been appointed receiver of the Northwestern National Bank and Trust Company of Philadelphia by the Comptroller of the Currency of the United States of America on June 25, 1934.

2. That L. M. Reed was appointed receiver of the said Northwestern National Bank and Trust Company of Philadelphia as of the close of business October 25, 1939, to succeed W. B. Ward, and he is now the duly appointed, qualified and acting receiver of the said bank, by authority of the Comptroller of the Currency of the United States of America.

3. That for some time prior to February 28, 1933, George H. Kellerman, husband of Matilda Kellerman, the defendant, was a depositor in the Northwestern National Bank and Trust Company of Philadelphia.

4. That among other notes executed by George H. Kellerman, in favor of the Northwestern National Bank and Trust Company of Philadelphia, the latter did, on February 28, 1933, make and execute a renewal collateral note, hereinafter called "note", payable to the order of the Northwestern National Bank and Trust Company of Philadelphia. According to the terms of the said note, George H. Kellerman promised to pay to the order of the Northwestern National Bank and Trust Company of Philadelphia the sum of $9,245.92 on April 28, 1933.

5. As collateral security for the payment of the said note, George H. Kellerman delivered eleven trust certificates, hereinafter called "certificates", in the face amount or value of $1,000 each, of Electric and Peoples Traction Company, a corporation, with the right on the part of the holder thereof, in case of default in payment, to sell the said securities at any broker's board, or, at public or private sale, at the option of the holder, and with the right on the part of the holder to become purchaser thereof at such sale. The said certificates are Nos. A5110, A27581, A27582, A27196, A27054, A26257, A25333, A25332, A25331, A25330, A22037.

6. The aforesaid certificates were then owned by Matilda Kellerman, the defendant herein, wife of the said George H. Kellerman, and were pledged by him to the Northwestern National Bank and Trust Company of Philadelphia, with the consent of the said Matilda Kellerman to the above pledge. The consent of the said Matilda Kellerman to the above pledge was in writing, as follows:

"To the Northwestern National Bank

"I hereby declare that George H. Kellerman has my full consent to pledge $11,000. Electric & Peoples Traction Co. 4% with the Northwestern National Bank as collateral for any loan to George H. Kellerman, and that so long as said securities may remain in the custody of said Bank, I expressly ratify and agree in advance to any and all agreements which said George

H. Kellerman may make with the Bank regarding the use of said collateral for any loans to him, and I expressly authorize the said Bank to sell said securities at public or private sale in accordance with the terms of any note which said George H. Kellerman may give to represent his loans, and hereby agree to save said Bank harmless and indemnified forever against any result which may follow such action.

"Witness at signing

"(s) J. A. Batten

"(s) Matilda Kellerman

"Philadelphia 8/12/31".

7. The aforesaid note was presented for payment on April 28, 1933, at the office of the Northwestern National Bank and Trust Company, during regular business hours, but the said George H. Kellerman failed and refused to pay the same.

8. That, in accordance with the terms, conditions, agreements and the authority contained in "note", the plaintiff did offer, at private sale, "certificates" on December 6, 1937, at the offices of the plaintiff, 3650 North Broad Street, Philadelphia, and at such private sale, did purchase the "certificates" for the sum of $500, which sum was given and applied as a credit to George H. Kellerman on his indebtedness to the Northwestern National Bank and Trust Company of Philadelphia, as above stated.

9. The plaintiff has requested and demanded of the said Matilda Kellerman that she assign and transfer the said "certificates" to the plaintiff, which request and demand have been refused by her.

10. That dividends were paid to the said Matilda Kellerman on said "certificates" after the execution of the aforementioned "note", as follows:

| | |
|---|---|
| April 1, 1933 | $220.00 |
| October 1, 1933 | 220.00 |
| April 1, 1934 | 220.00 |
| June 15, 1935 | 38.83 |
| September 30, 1935 | 45.09 |
| February 6, 1937 | 129.34 |
| June 10, 1938 | 64.68 |
| October 24, 1938 | 64.68 |
| June 30, 1939 | 45.21 |
| | $1,047.83 |

### Discussion.

The action here is in equity to recognize and enforce an implied trust. The defense is twofold: (1) that the defendant Mrs. Kellerman did not sign the Consent to Pledge in the presence of Batten, the attesting witness (Paragraph 6, Findings of Fact); and (2) that the plaintiff is guilty of laches such as to bar him from bringing this action.

At this point it must be stated that in her Answer to the amended complaint, the defendant denied that she ever executed the consent to pledge. At the trial, however, she admitted that she did sign the Consent to Pledge, but that the paper which she signed was then in blank form and that Batten was not present nor did he witness her signature. Decision was reserved at trial on the defendant's request to amend her Answer.

There is no doubt that under Rule 15(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, that such amendment is permissible. Rule 15(b), "Amendments to Conform to the Evidence", provides: " * * * If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. * * * "

As to amendments of pleadings during trial, see Caldwell et al. v. Sears-Roebuck & Co., D.C., 31 F.Supp. 888; Low v. Davidson Mfg. Co., 7 Cir., 113 F.2d 364; Lientz v. Wheeler, 8 Cir., 113 F.2d 767; In re Kantor's Delicatessen, Inc., D.C.E.D. N.Y. 1940, 34 F.Supp. 898; Holland v. Majestic Radio & Television Corp. et al., D.C., 27 F.Supp. 990.

As was stated by James A. Pike, Esq., in his admirable discussion, "Some Current Trends in the Construction of the Federal Rules", 9 George Washington Law Review 26: "With respect to issue-formulation, pleadings are growing increasingly less effective because of the trend toward liberality of amendment during the course of trial where objection to the introduction of evidence is made on the ground of 'variance', and toward the implied amendment of pleadings to conform to evidence without objection."

The permitted amendment raises the simple fact question as to whether or not Batten witnessed Mrs. Kellerman's signature, as is contended by the plaintiff, or whether or not she signed the Consent to

Pledge in blank and his signature as witness was subsequently placed on the Consent so as to constitute an "alteration" of the instrument, thus making it invalid according to defendant.

■ I find as a fact from the testimony that Mrs. Kellerman signed the Consent to Pledge with full knowledge of its contents; that Batten was present when she signed the Consent, and that he affixed his signature as "witness" at the time of her signing the instrument.

Mrs. Kellerman testified that she can read; that she in fact read the Consent before she signed it; that she had on numerous occasions signed other papers relating to stock and bond transactions, powers of attorney, etc.; that she understood the meaning of the word "consent", and that she also understood the meaning of the word "pledge". In this connection it must be kept in mind that the Consent contained in its *printed* portion the words "I hereby declare that ——— has my full consent to pledge," etc.

Mrs. Kellerman's testimony that when she signed the Consent she thought "it was a legal paper for exchanging bonds" (P. 78, N.T.) is incredible.

■ Mrs. Kellerman is, of course, bound by the provisions of the Consent. It is well settled that a person who, before signing a contract, fails to read its contents; or, if he is unable to read, fails to demand that it be read and explained to him, is bound by the provisions of the contract. See Commonwealth, to Use v. Gudaitis et al., 323 Pa. 110, 186 A. 82. The following quotation from the case just cited is especially pertinent (323 Pa. page 111, 186 A. page 83): "* * * As long ago as when Sheppard's Touchstone was written (1648), the law was as follows (page 56): 'If a party that is to seal the deed can read himself and doth not, or being illiterate or blind, doth not require to hear the deed read or the contents thereof declared, in these cases albeit the deed is contrary to his mind, yet it is good and unavoidable.' In language not quite so quaint, we repeated this principle in Greenfield's Estate, 14 Pa. 489, 496, adding that one who so signs a document 'is guilty of supine negligence, which * * * is not the subject of protection, either in equity or at law.' We have never deviated from this ruling, one of our latest cases being O'Reilly v. Reading Trust Co., 262 Pa. 337, 343, 105 A. 542." See also 80th Div. Vet. Ass'n v. Johnson, 100 Pa.Super. 447.

■ The law is well settled, too, in Pennsylvania that a married woman may assign her personal property as collateral for her husband's benefit, and that such assignment cannot be repudiated except for fraud by the assignee. See Kulp v. Brant, 162 Pa. 222, 29 A. 729. This case is dispositive of Mrs. Kellerman's contention that she signed the consent under a misapprehension due to misleading statements made to her by her husband. In Kulp v. Brant, supra, the court stated (162 Pa. page 225, 29 A. page 730): "* * * Without considering the questions as to whether the statements made by the husband were confidential communications, or whether the testimony of the wife was competent, being directly against the husband, in that it invalidated for fraudulent representations a paper which he had delivered to his creditor as security for a loan, we may assume that he did not state the truth to his wife when he procured her signature. But this does not affect Kulp unless he was a party to the fraud. The policy was the wife's property; a chose in action. * * * It has so often been decided that a married woman may assign her personal property as security for her husband's debts, and that, if the creditor acts on the faith of the assignment, she will not be allowed to repudiate it, that it is useless to again cite the authorities. * * * "

The relief sought by the plaintiff in the instant case is twofold in nature: (1) an order compelling the defendant to sign and transfer the Certificates to the plaintiff and (2) recovery of the interest or dividends received by the defendant.

■ It is clear that equity has jurisdiction to grant the relief sought.

■ It is apparent that an implied trust resulted from the pledge of the Certificates and the Consent to Pledge by the defendant.

"Implied trusts are more frequently defined as those which, without being express, are deducible from the nature of the transaction as matters of intent, or which are superinduced upon the transaction by operation of law as matters of equity, independently of the particular intention of the parties." 65 C.J. Sec. 12, p. 221.

"* * * the jurisdiction of equity in all cases of trusts, express or implied, re-

sulting or constructive, is unquestioned * * *." 21 C.J. Sec. 93, p. 116.

As was stated by Pomeroy in his Equity Jurisdiction, 2d Ed., Vol. 1, Sec. 151: "The doctrine of trusts became and continues to be the most efficient instrument in the hands of a chancellor for maintaining justice, good faith, and good conscience."

Clews v. Jamieson, 182 U.S. 461, 479, 21 S.Ct. 845, 852, 45 L.Ed. 1183, cited with approval the doctrine of trusts as enunciated by Pomeroy: "All possible trusts, whether express or implied, are within the jurisdiction of the chancellor. * * * The remedies which such a court may give 'depend upon the nature and object of the trust; sometimes they are specific in their character, and of a kind which the law courts cannot administer, but often they are of the same general kind as those obtained in legal actions, being mere recoveries of money. A court of equity will always, by its decree, declare the rights, interest, or estate of the cestui que trust, and will compel the trustee to do all the specific acts required of him by the terms of the trust. * * * This remedy the courts of equity will always decree when necessary, whether it is confined to the payment of a single specific sum or involves an accounting by the trustee for all that he has done in pursuance of the trust, and the distribution of the trust moneys among all the beneficiaries who are entitled to share therein.' 1 Pom.Eq. Jur. § 158."

In the case of Peoples-Pittsburgh Trust Co. v. Saupp, 320 Pa. 138, 182 A. 376, 103 A.L.R. 844, the Supreme Court of Pennsylvania held that equity has jurisdiction to compel the owner of pledged stock to transfer to the pledgee bank a stock dividend received by the pledgor.

Said the Pennsylvania Supreme Court in that case (320 Pa. page 141, 182 A. page 377, 103 A.L.R. 844): "It becomes important to analyze the nature of the transaction giving rise to this case. When appellant [bank] held the certificate, with power of attorney, etc., for 100 shares of stock of the machine company, which stock was not transferred to it on the books of the company, it merely held a piece of paper as evidence of the fact that appellee, i.e., the pledgor, had a certain interest, as set forth in that paper, in the stock of the Machine Company, *which interest the appellee was holding in trust for appellant as security for her indebtedness.* She was at all times after pledging this stock a trustee for appellant of that interest in the machine company. Williston on Contracts, vol. 2, § 1042, says: 'In these cases (i.e., in cases of pledging stock certificates, bank books, etc.) the bailment of the paper is in legal effect the pledge of the intangible right which the paper represents.' "

Holding that the retention of the stock dividend was "a breach of an implied trust" the court stated (320 Pa. pages 143, 144, 182 A. page 378, 103 A.L.R. 844):

" 'Implied trusts arise by implication of law 'because morality, justice, conscience and fair dealing demand that the relation be established.' Dixon v. Dixon, 123 Me. 470, 124 A. 198, 199. In Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 122 N.E. 378, 380, the New York Court of Appeals, speaking through Mr. Justice Cardozo, said: 'A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest equity converts him into a trustee.' Courts act upon the same logic in *implying* a trust.

* * * * * * *

"The instant case is not one of a suit for the specific performance of a contract for which an action at law would lie; it is an appeal to a court of equity to recognize and enforce an implied trust."

Discussing the right of the pledgee bank to all dividends received by the pledgor on the pledged stock, the court said (320 Pa. page 142, 182 A. page 378, 103 A.L.R. 844): "It is well recognized that 'a pledgee is entitled to hold the natural increase of the thing pledged. Thus if he has taken in pledge domestic animals, he will hold in pledge the young of such animals afterward born.' Jones on Collateral Securities (Pledges), § 396. It has likewise been held that dividends accruing upon pledged stock belong to the pledgee. Herrman v. Maxwell, 47 N.Y.Super.Ct. [347] 15 Jones & S. 347; Boyd v. Conshohocken [etc.] Mills, 149 Pa. 363, 24 A. 287. In McCrea v. Yule, 68 N.J.L. 465, 53 A. 210, it was held that a pledgee of personal property, assigned as collateral security, has the right to collect the interest, dividends, and income accruing on the collateral as-

signed, accounting to the pledgor upon the redemption of the pledge. In making such collections, the pledgee is a trustee of the pledgor for the proper application of the funds collected or to refund the same to the pledgor if the debt be otherwise paid."

To the same effect see 67 A.L.R., page 485, where it is stated: "It is a general rule that the pledgee of stock is entitled to all dividends which accrue on the stock which he holds during the pendency of the pledge, and this is true although the pledgee has failed to procure registration on the books of the corporation. *The pledgee not only has a right, but is in duty bound, to collect the dividends on the stock, and apply them to the debt for which the stock is pledged, or to hold them as trustee for the pledgor.* 7 R.C.L. Sec. 268, p. 293." (Emphasis supplied.)

Finally, as to the defendant's contention that the plaintiff is barred by laches in that suit was not brought until June, 1939, although there was default on Mr. Kellerman's note on April 28, 1933, and the Certificates were sold on December 6, 1937:

It is well settled that laches is not a mere matter of time, and that the delay in bringing the suit must have been prejudicial to the defendant. See Galliher v. Cadwell, 145 U.S. 368, 12 S.Ct. 873, 36 L.Ed. 738; Southern Pacific Co. v. Bogert, 250 U.S. 483, 39 S.Ct. 533, 63 L.Ed. 1099; Farmers' Bank of McSherrystown v. Halsey, Stuart & Co., 3 Cir., 21 F.2d 818; Steaua Romana Societate, etc. v. Woodman, D.C., 2 F.Supp. 303.

As was stated in Farmers' Bank of McSherrystown v. Halsey, Stuart & Co., supra, 21 F.2d at page 822: "Proof that the plaintiff's delay gave it some advantage or subjected the defendant to some prejudice is necessary, for laches, unlike limitation, is not a mere matter of time."

Judge Kirkpatrick, of this District, succinctly stated the rule as to laches in Steaua Romana Societate, etc. v. Woodman, supra, as follows (2 F.Supp. page 313): " * * * The plaintiff is not guilty of such laches as will preclude it from asserting its rights in this proceeding. * * * The application of the doctrine of laches by courts of equity is not arbitrary or technical. The cases 'proceed upon the theory that laches is not, like limitation, a mere matter of time; but principally a

question of the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of the property or the parties.' Galliher v. Cadwell, 145 U.S. 368, 373, 12 S.Ct. 873, 875, 36 L.Ed. 738; Ward v. Sherman, 192 U.S. 168, 175, 24 S.Ct. 227, 48 L.Ed. 391. ' * * * Where a court of equity finds that the position of the parties has so changed that equitable relief cannot be afforded without doing injustice, or that the intervening rights of third persons may be destroyed or seriously impaired, it will not exert its equitable powers in order to save one from the consequences of his own neglect.' Penn Mutual Life Ins. Company v. Austin, 168 U.S. 685, 698, 18 S.Ct. 223, 228, 42 L.Ed. 626. These are statements of the general rule." The rule is the same in Pennsylvania. Gribben v. Carpenter et al., 323 Pa. 243, 185 A. 712.

It was not contended nor is there an iota of evidence in the instant case that the defendant was prejudiced by delay in bringing suit.

In its amended complaint the plaintiff seeks recovery of interest or dividends received on the Certificates not only subsequent to but also prior to February, 1933, when the defaulted loan was made.

The plaintiff's claim must fall as to the interest or dividends received prior to February, 1933, as it is only entitled to recover interest or dividends that were received subsequent to that time.

I therefore make the following conclusions of law:

1. The plaintiff, L. M. Reed, receiver of the Northwestern National Bank and Trust Company of Philadelphia, is the rightful and true owner of eleven Trust Certificates, in the face amount or value of $1,000 each, of the Electric and Peoples Traction Company, a corporation, which Certificates were, prior to December 6, 1937, the property of Matilda Kellerman, and which Certificates are numbered as follows: Nos. A5110, A27581, A27582, A27196, A27054, A26257, A25333, A25332, A25331, A25330, A22037.

2. The plaintiff, L. M. Reed, receiver of the Northwestern National Bank and Trust Company of Philadelphia, is entitled to dividends which were paid to Matilda Kellerman on the said Certificates, together with interest thereon, from the date of

each payment, which payments were as follows:

| April 1, 1933 | $220.00 | |
|---|---|---|
| October 1, 1933 | 220.00 | |
| April 1, 1934 | 220.00 | |
| June 15, 1935 | 38.83 | |
| September 30, 1935 | 45.09 | |
| February 6, 1937 | 129.34 | |
| June 10, 1938 | 64.68 | |
| October 24, 1938 | 64.68 | |
| June 30, 1939 | 45.21 | $1,047.83 |

A decree may be submitted ordering and directing the defendant to pay to the plaintiff the sum of $1,047.83 covering interest or dividends received, and further ordering and directing the defendant to assign and transfer the said Certificates to the plaintiff, and to execute any and all papers and forms which may be necessary to effect said transfer.